## Case No. 3,318.
### CRAFT v. LATHROP.
[2 Wall. Jr. 103, 4 Am. Law J. (N. S.) 181.][1]
Circuit Court, E. D. Pennsylvania. May Term, 1851.

EJECTMENT—PENNSYLVANIA STATUTE OF APRIL 13, 1807.

After a question of title to lands in Pennsylvania, has been, in substance, three times before courts of competent jurisdiction, all of which have been of opinion against it—an opinion which this court, also, on understanding it, concurs in—this court will enjoin further proceedings at law, and compel the party claiming under such title to give up the evidences of it, and to make a deed of all his estate derived under them to the party whom he has been vexing. And this though the title alleged in the first suit was not formally the same as that in the second, and though in the third, the plaintiff by suffering a nonsuit prevented a verdict and judgment against him at all. The Pennsylvania statute of April 13, 1807, enacting that "two verdicts" and judgments thereon, in succession for the same party, in ejectment between the same parties, shall "bar the right," was intended to supply a want of equitable power in the Pennsylvania courts, as then constituted; and whatever it may mean, does not prevent this court, which has complete equity powers, from giving complete equity relief in such a case as is above stated.

[Quoted in Dishong v. Finkbiner, 46 Fed. 15.]

In equity. This was a bill of peace to May term, 1851, in which the facts were es-

[1] [Reported by John Wm. Wallace, Esq. 4 Am. Law J. (N. S.) 181, contains only a partial report.]

sentially these: Steele Semple, Esquire, being in debt, died in 1813, the owner of a piece of land. One of his creditors, acting amicably and in concert with his administrator, the Hon. Wm. Wilkins, obtained judgment by consent against his estate, took his piece of land in execution, and in 1815 had it sold. Mr. Wilkins bought it in, taking the sheriff's deed in his own name; no money passing between him and the sheriff; and the purchase being made for the benefit of Semple's family: but no trust being specially declared. In this state of facts, another creditor, the Hon. James Ross, in 1819, obtained judgment against the administrator, and having kept his judgment alive till 1833, levied then on the same piece of land, had it sold, bought it himself in 1834, and sold it to Craft, the present complainant, who had had possession of it since 1837. Afterwards in 1842, a daughter of Semple's claiming under two titles, to wit, as one of her father's heirs, and also as heir to her mother, (Semple's second wife who had had some supposed, independent right in the land), brought ejectment against Craft in a state court, (Mr. Justice Grier at that time presiding there and trying the case), in which a verdict and judgment were given against her. This judgment the supreme court of Pennsylvania affirmed on error (Payne v. Craft, 7 Watts & S. 458, 465), declaring it to be "clear that the sale of the real estate in dispute under the judgment to Mr. Ross, was a good and valid sale, and such as vested him with the right of his debtor thereto at his decease." After this, the heirs of Semple filed a bill in equity against Mr. Wilkins, the administrator, for an account as trustee of another tract of land of Semple's, which Mr. Wilkins had bought in, in the same way as this, and claimed also an account of this tract, the subject of this suit. Mr. Wilkins, in answering that part of the bill which related to this tract, gave an account of Mr. Ross's judgment, and the proceedings under it "since adjudicated," as he answers, "to be regular and valid by the decision of the supreme court of Pennsylvania, the court of last resort upon territorial questions:" and he quotes the language already given from that decision; adding, "As it is thus settled that the title of Mr. Ross relates back to a period beyond any connection of the respondent with the premises, it is manifest that by the said sale, all the relations of the respondent to the property were severed." No exceptions were filed to this answer; and afterwards, in 1847, Mr. Wilkins by deed reciting the purchase of 1815, and that the land then bought by him was held "in trust for the use of the creditors and children of Steele Semple," referring to the bill in equity and his answer and account, and reciting that "it is acknowledged that the said trusts have been satisfactorily and faithfully administered and executed," conveys to Semple's heirs "without recourse

or warranty," all Semple's and all his, Wilkins's, right, title, claim and demand of, in and to the said tracts of land, "so far as the same have not been sold."

Being thus clothed with Mr. Wilkins's title, Semple's daughter and the other heirs brought a second ejectment against Craft, in the same state court, where a verdict and judgment were again entered for the defendant. On error to the supreme court of the state in 1848, this judgment was affirmed; only, however, by a bare majority of judges; this majority after having declared a reluctance to regard the matter as open after its former judgment, affirming that judgment so far as it covered the old facts, and deciding that there was nothing in the title derived through Mr. Wilkins, "to defeat the estate otherwise undoubtedly vested in Mr. Craft." Hays v. Heidelberg, 9 Pa. St. 203, 204. Being thus unsuccessful in the state courts, the parties there plaintiff, afterwards sold or conveyed the land to one Lathrop, the defendant, in this case, a citizen of Virginia; and he, in 1848, brought ejectment in this court against Craft, where he set forth essentially the same title as the parties, under whom he held, had shown in the state courts, and where, this court, Mr. Justice Grier now presiding here, having charged against him, he suffered a nonsuit. Being thus out of court, and at liberty to begin anew, the same Lathrop in 1850 brought another ejectment against Craft. His declaration being in the usual form, did not show under what title he now claimed; and nothing appeared otherwise to show that it was essentially different from that already exhibited by him or by those from whom he held.

On these facts, Craft now filed this bill against Lathrop, setting forth his case and submitting "for the consideration of this court whether after the three repeated suits at law by said defendant or those under whom he claims—if he pretends to have any other title than was presented and judicially condemned by the aforesaid courts, or hopes to raise any other or better title under the same rights of heirship or the same deeds, or in any other right or on any other evidence,— he is not bound to set forth the same by schedule or otherwise, so that this court may examine the same and be satisfied that his fourth ejectment has some reasonable grounds upon which future litigation ought to be encouraged;" and praying, "that inasmuch as the same title and possession which, at said former trials, was vested in the complainant, remains in him, that the respondent should be restrained from proceeding in the ejectment commenced here and to pay the costs of that suit and this bill, and enjoined from commencing and prosecuting any other ejectment against the complainant's said lands at any time hereafter so that the complainant may be quieted and undisturbed by the said respondent or any one claiming un-

der him; that the said deed to respondent and all those under which he sets up any title may be delivered into this court to be cancelled or destroyed, and that the said respondent may be compelled to release any title or claim he sets up to the said premises, and that the complainant may receive such further or other relief as to this court may seem meet and equitable."

Without reporting all the special matters of defence, which were essentially a re-investigation of the original case,—which this court regarded as without merits—and an attack on the decisions of the supreme court,—the strong ground against the relief prayed for was a statute of Pennsylvania passed April 13th, 1807, which enacts, that "where two verdicts shall, in any writ of ejectment between the same parties, be given in succession for the plaintiff or defendant, and judgment be rendered thereon, no new ejectment shall be brought; but where there may be verdict against verdict between the same parties and judgment thereon, a third ejectment in such case, and verdict and judgment thereon, shall be final and conclusive, and bar the right."

David Ritchie and T. Williams against the bill. Where there is a statute regulation, equity cannot interfere and set it aside. The statute of limitations must be regarded by the chancellor equally as by the common law judge, although there are cases where the pleading of it is contrary to good conscience. Our statute with regard to ejectments is of the same class. It makes two verdicts and judgments on the same side in an action between the same parties conclusive; but the right of a party to make claim until two verdicts and judgments have been so had, is fairly deducible from the act of assembly, and no fair reasoning can put any other construction on it. There might, it is true, be a case where it could be shown to the chancellor that there was an adverse possession of more than twenty-one years; that the plaintiff in ejectment had no shadow of title, knew that he had none, and brought his action merely to annoy; not to enforce rights he really believed himself to possess. But this is not such a case. Mr. Craft's possession is of about fifteen years only. The property in dispute is claimed by the representatives of Mr. Semple, whose it originally was by the acknowledgment of all parties. The title of Mr. Ross never accrued till twenty years after Semple's death. This land has been taken from Semple's representatives by a process which, to them, appears neither just nor lawful, and they insist upon their absolute right to test the matter in every mode and as long as permitted by law. If it be said the supreme court of Pennsylvania has already decided the matter, the reply is, that court has pronounced one judgment on the title here set up, and that this judgment was by a bare majority of the court, two judges out of five dissenting. It is believed that the supreme court of Pennsylvania will not make a similar decision should the case again be presented. At all events the plaintiffs have a right to two judgments; and the proper time to allege the authority of that court as a bar, will be when it has pronounced two judgments in the same way. The acts of assembly with regard to two verdicts and judgments in ejectment have received a construction in Brown v. Nickle, 6 Pa. St. 390, which goes farther in our way than it would be necessary for us to ask. In an ejectment where the title was really not in question, and the only dispute was the payment of a mortgage, the court held that one verdict and judgment was not conclusive, the bare form of the action entitling the party under our statute to two verdicts and judgments in one way. But whatever injunction this court will grant against proceeding at law or otherwise in the courts of the United States, certainly it will not compel a surrender of our title papers, or, what is worse, a transfer of our estate by which we shall be deprived of our rights in the state courts of Pennsylvania. There, certainly, we are not barred, because there we can be barred only technically and at law under the statute. There have not been "two verdicts in an ejectment between the same parties given in succession for the plaintiff." This court is not so greedy of jurisdiction that in a question of real property, a matter specially subjected to state law, it will snap after a case and clutch it away from the tribunals to which it especially belongs. At furthest, it will use its equity powers only to prevent what it deems an abuse of its law: and not to make void what it deems the unwise or inequitable legislation of the assembly of Pennsylvania. Any injunction must be confined, therefore, to enjoining the respondent from suing again in the federal courts.

Mr. Craft argued the case in person, in favour of his bill.

GRIER, Circuit Justice. It is a maxim of the civil as well as the common law. and a rule absolutely necessary for the maintenance of the public welfare, "that the judgment of a court of competent jurisdiction, while it remains unreversed, is conclusive between the parties and privies thereto, so as to estop them from again litigating a fact once tried or found." If it were otherwise, there would be no end to litigation. This rule is equally applicable to suits which affect the title to real as to those respecting personal property. A verdict and judgment in a writ of entry or a writ of right, were as conclusive in their effects, as they were in actions of debt, trespass or trover. But when the action of ejectment was substituted for real actions. by the ingenious fiction of a lease, entry and ouster, and the recovery of a fictitious term of years, it is plain, that though

in fact the same issue might be tried between the same real parties, yet the record would exhibit an entirely different issue between different parties: so that the verdict and judgment on a lease, entry and ouster of John Doe would not technically be pleaded in bar to another ejectment, where the lease, &c., were to Richard Roe.

From such technical reasoning upon the fictitious forms of the action of ejectment has arisen this anomaly in the common law, and not (as has been sometimes mistakenly asserted) from any distinction made by the common law, in favour of real property. Indeed, no good reason can be given why the solemn judgment of a court of competent juridiction should be conclusive on personal rights valued at millions, and inconclusive when the title to realty, worth but an hundred, is in litigation.

But great as the evils of endless and vexatious litigation thus introduced by means of legal fictions, were, courts of equity were at first slow to interfere; Lord Cowper having, in a celebrated case (Lord Bath v. Sherwin, Finch, Prec. 261, 10 Mod. 1), refused to interfere by injunction, where five several verdicts and judgments in ejectment had been rendered in favour of one party. But this decision was overruled by the house of lords, and a perpetual injunction was decreed. 4 Brown, Parl. Cas. (2d Ed., 1803), 373. The ground of the decision undoubtedly was, that this was the only adequate means of suppressing oppressive litigation, and hindering irreparable mischief. This doctrine has ever since been steadily adhered to by courts of equity: and now wherever a right has been satisfactorily established at law, a court of equity will interfere to prevent further litigation, without inquiring particularly what number of trials in ejectment have taken place. Leighton v. Leighton, Id. 378, and 1 P. Wms. 671–673. See Story, Eq. Jur. § 859.

In Pennsylvania (till lately) they had no courts of general equity jurisdiction, which could give a remedy against vexatious litigation by injunction, or by compelling the transfer or cancellation of an outstanding fraudulent or void deed, which might cast a shadow over the title of the true owner, and be used to his annoyance.

To remedy, in some measure, this evil arising from the want of tribunals with sufficient powers to administer equity, the act of the legislature of April 13th, 1807, was passed, which constitutes the real ground of defense in this case. It is not necessary to criticise the very peculiar language of this act. It has been construed to mean, that two verdicts and judgments between the same parties or privies and on the same title, shall be conclusive of the right, and a bar to any further actions. By thus making two verdicts and judgments in favour of one party, a bar or estoppel which might be pleaded in a court of law to another action between the same parties, a partial remedy was af-

forded for the evils arising from want of a court of equity. But in this court, which has full powers to give an equitable remedy against oppressive litigation, it by no means follows, that a party can have no other remedy than that given by a court of law under this statute. A litigious claimant of land may annoy the owner forever, and evade the estoppel provided by this act, by pursuing the course which the respondent in this case has seen fit to pursue. He may bring his ejectment, have a full hearing before a court and jury, and when the court has pronounced his title insufficient in law to entitle him to a verdict, he may take a nonsuit, and renew his litigation; speculating on the possible chances of a change of judges or of the law, or hoping to extort from his adversary the price of peace. The act of 1807 was not passed to confer a right of harassing another forever with litigation, provided the party can evade two verdicts and judgments, but to give a legal remedy, defective indeed, but better than none. Equity is a part of the common law of Pennsylvania; but for want of proper tribunals it is often very defectively administered. Hence (till lately) partnership accounts could be settled only in the antiquated action of account-render; there was no mode of compelling a discovery; there was no power to order the delivery or concealment of fraudulent deeds. Specific execution of a contract could not be enforced except by conditional verdicts in actions of covenant and ejectment. Certain of the courts of law have lately been entrusted with powers to remedy some of these defects arising from want of a court of general equity jurisdiction; but as to most of them, equity is still administered with the defective and cumbrous machinery of a court of law. But the courts of the United States, laboring under none of these difficulties, through defect of power, have always administered equity in this state, as fully as in others, and have, therefore, never adopted the practice of the Pennsylvania courts of endeavoring to administer it indirectly and defectively through the forms of legal actions. Hence we decree and compel the specific execution of a contract as a court of chancery, and not by an action of ejectment on an equitable title, or pursuing any of the other special and defective methods of giving equitable remedy, which necessity has compelled the legislature or courts of Pennsylvania to invent or adopt.

Our inquiry in the present case will, therefore, be, not, what remedy the courts of Pennsylvania could give to the complainant, or whether he has shown a statute bar as against the respondent (for then he would have no need to come into a court of equity); but, whether he has shown a case, which entitles him to relief from this court sitting as a court of chancery with full power to administer equity. Or, in other words, has the complainant so satisfactorily established his

title at law, as to entitle him to invoke the aid of this court to suppress and prevent further litigation of the same question? (His honour here went into a minute review of the cases brought in the state courts, and of the ejectment first brought in this court. And while he stated that this court did not feel called upon to enter into argument, to justify the opinions of the supreme court of Pennsylvania affirming the validity of Craft's title, he yet reviewed the facts of those cases minutely, and of the proceedings to account and of the first ejectment in this court, and expressing the entire concurrence of this court in the principles on which these cases were founded, continued as follows:) That the complainant is entitled to the remedy prayed for in his bill, we think, cannot admit of a doubt. His title has, in fact, been three times declared valid by the courts of law as against the claim set up by the respondent. The complainant is now harassed with a fourth ejectment on the desperate speculation, that possibly the courts of the United States may be persuaded to overrule and reverse the decision of the supreme court of Pennsylvania on a question of title to real property depending on the peculiar laws of that state. The purchase and sale of stale and desperate claims for the purpose of speculation and litigation, by persons out of possession, has become so frequent, that we have constant cause for regret, that Pennsylvania has not adopted the ancient doctrine of the common law on the subject of maintenance and champerty.

We are of opinion, therefore, that the complainant is entitled to the relief prayed for,—

1st. Because his title as against that under which the respondent claims, has been thrice tried at law and decided in his favour. Twice by the supreme court of Pennsylvania, and once by this court.

2nd. Because the judgment of the supreme court, affirming the title of complainant, and adjudging the deed of Mr. Wilkins to be void, has been made the foundation of a settlement in a chancery suit and its correctness acknowledged by the administrator and his pretended assignees, under whom the respondent here claims.

3rd. Because Mr. Wilkins after the proceedings we have stated, is estopped from setting up a claim to the land as his own, or affirming the validity of the deed to him; and the respondent in so doing, is making a fraudulent use or rather abuse of the assignment which has been purposely drawn in such form as to show that Mr. Wilkins, the administrator, laid no claim to this property and did not consider himself as transferring any.

4th. Because this court fully concur in the correctness of the decisions at law on the title in question.

And this court doth accordingly hereby order, adjudge and decree: That the ejectment suit now pending on the law side of this court, commenced by the respondent against the complainant, be enjoined, and all further proceedings thereon be stayed, and that said respondent pay all costs incurred in said suit; and that respondent be enjoined from commencing or prosecuting any other action of ejectment against the said complainant, his lessees, alienees or heirs for the tract of land described in said bill of complaint, under any title or pretence of title, vested in complainant at the time of the filing of the bill in this case, or at the time of instituting the action of ejectment hereby enjoined. And further that the respondent do release and convey to the complainant, his heirs and assigns, all right, title, claim or demand whatsoever of said respondent to the land in dispute vested in him by and under the deeds in the bill of complaint stated and described, by a deed duly executed and acknowledged, and to be filed in this court within thirty days from the date of this decree. And that said deed when filed shall be recorded in the recorder's office of Alleghany county. And that in default of the said respondent's executing and filing such deed within thirty days from the filing of this decree, the clerk of this court is hereby appointed master and commissioner of this court to make, execute and acknowledge such a deed of release, and have the same recorded. And that all the costs of this suit, including those of the said releases and recording the same, be paid by the said respondent.