The State of Iowa, Appellee, v. The Glucose Sugar Refining Company, Appellant.

**Fouling of Water:**  jury question.  On prosecution against a glucose factory for fouling a river with discharges from a sewer, it was shown that the river below the sewer became foul, 1  emitted sickening odors, and that fish inhabiting the waters died in large numbers.   Various witnesses testified that such conditions were unknown before the establishment of the defendant's works.   A chemical analysis of the water made it plain that the tendency of the discharge must have been to befoul the river to a material degree, but there was testimony that at about the time the river below the sewer was claimed to have been most offensive somewhat similar conditions prevailed above the sewer.   *Held*, that whether the river was fouled by discharges from the sewer was for the jury.

**Venue:**   *Prosecution for nuisance.*   Code, section 5157, provides that when a public offense is committed partly in one county and partly in another, or when the acts requisite to consummation of the offense occur in two or more counties, jurisdiction is in either county, except as otherwise provided.   *Held*, 2  that where one corrupts the waters of a river in a certain county, and the corruption renders the water impure in another county, a prosecution for nuisance may be maintained in the latter county.

**Evidence:**   fouling of river.   Where the waters of a river are fouled by discharges from a sewer at the point of discharge, 1  and similar conditions appear at a lower part of the stream, it is not necessary for the state, on a prosecution for the foul condition at such lower part, to actually trace the passage of impurities.

Of defendant's incorporation.   Where, on a prosecution of a corporation for the maintenance of a nuisance, the allegation

of the indictment as to corporate existence, etc., was a mere naming of defendant, and it having appeared and entered a plea, the state was not required to prove legal incorporation.

*Same.* Where a corporation, sued as such, appears and pleads, so as to relieve the state from burden of proving corporate existence, any error in admitting a copy of its articles of association to show corporate existence is harmless.

*Absence of revenue stamp.* A copy of a certificate of corporate organization offered in evidence to show corporate existence, though it bore no revenue stamp as required by act of 1898, was properly admitted.

Competency: *Personal knowledge.* Where, on a prosecution against a corporation for maintenance of a nuisance, an employe was permitted to say that defendant was the successor of a certain company, he having been directed to speak only of his personal knowledge, the testimony was competent.

Review on appeal: *Harmless error.* On appeal the testimony, though immaterial, could not be regarded as prejudical, in the absence of any showing that defendant's predecessor did not bear a favorable reputation.

*Appeal from Tama District Court.*—Hon. G. W. Burnham, Judge.

Saturday, October 11, 1902.

Indictment charging defendant with the commission of a nuisance. Verdict of guilty. Judgment on verdict, and defendant appeals.—*Affirmed.*

*Wm. D. Barge* and *Struble & Stiger* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

Weaver, J.—The defendant is the owner of glucose works at Marshalltown, in Marshall county, Iowa. Certain refuse matter and washings from these works, including more or less of various chemicals used in the production of the goods there manufactured, are discharged into a

sewer, the flow from which empties directly or indirectly into the Iowa river. From the point of this discharge the river flows in a south-easterly direction through Tama county. The indictment alleges that the defendant is a corporation organized under the laws of New Jersey, and that the substance or materials discharged by defendant into the river, as already stated, have caused the waters of said stream within Tama county to become corrupt, impure, and unwholesome, to the prejudice of the citizens of said county, and especially to certain named citizens engaged in operating paper mills on said river at the city of Tama. The defendant entered a plea of not guilty.

I. The first proposition in appellant's argument is that the verdict is without sufficient support in the evidence. The point is not well made. It is true there was testimony tending to show that at or about the time it is claimed the river in Tama county was most unclean and offensive somewhat similar conditions prevailed at several points in the same stream above the defendant's works. It was, of course, a legitimate argument to the jury that such facts if established, tend to weaken the state's claim that the foulness of the water below the mouth of the defendant's sewer was caused by the discharge therefrom, but it was for the jury to say how much weight and influence such showing should be allowed in reaching their verdict. It might easily happen that the water above the works was foul, and yet be true that the foulness below the works of which the state complains was caused by the discharge from appellant's sewer. That the discharge from the sewer was as "rank" as Richard's "offense" is abundantly shown. It is also shown that the river below the sewer became foul, emitted sickening odors, left a sticky gelatinous deposit on the stones and substances immersed in it, and clogged and interfered with the working of the paper mills at Tama. Fish inhabiting the waters died in large numbers, and the stench of their

decomposition was mingled with the odors arising from the unclean waters. Various witnesses testified that such conditions were unknown before the establishment of the defendant's works. A chemical analysis of water taken from above the mouth of the sewer, from the sewer itself, and from the stream below its mouth, makes it perfectly plain that the tendency of the discharge must have been to befoul the river to a material degree, and whether the impurity which was apparent at the city of Tama was attributable to this source was, as we have already said, for the jury alone to pass upon under all the evidence, and it is putting it very mildly to say that in this respect the verdict has support in the record.

II. It is next said there was no showing that the offense, if any, was triable in Tama county. The argument upon which this claim is based is that the place where the contents of the defendant's sewer are discharging into the river is in Marshall county; and, while there is evidence tending to show that such discharge was very impure, and tended to corrupt the river at this point, counsel say that "no witness testified to anything from which one could, by any warrant of law, conclude that this substance flowed into Tama county." We think, however, that there is sufficient warrant for the assumption that the ordinary law of gravitation is in full force in both counties, and that water at the mouth of the sewer, whether foul or pure, finds its way down stream without regard to county lines. It is true that in its movement down the current the impurities may be deposited, or become diluted and disappear, before leaving Marshall county; but it certainly cannot be required that the state shall produce witnesses who are able to say they have traced, step by step, the impure substances, from the point of their discharge all the way from the mouth of the sewer to the county where the indictment is found. If A, standing upon one side of the county line, is seen to fire a

gun at B, standing upon the other side of the boundary, and the latter falls dead of a bullet wound, the conclusion that the fatal bullet proceeded from A's gun is a mere inference, for no one saw its flight. So, if A corrupts the water of a river at a certain point in its course, and such act is followed by the appearance of a similar corruption of the stream immediately below him, the inference that the latter is the result of the former is but little less conclusive than in our first illustration. Counsel are correct, doubtless, in saying that, if the evidence of the state is to be believed, the defendant created a nuisance in Marshall county, and the court of that county had full jurisdiction to entertain an indictment for such offense. It does not follow, however, that the existence of jurisdiction of such offense in Marshall county precludes jurisdiction in Tama county for the nuisance there created. If it be true that defendant corrupted the river in the former county, and by the natural movement of the current the foul matter was carried into the latter county, rendering the water there impure, to the discomfort and injury of its citizens, no ingenuity of argument can do away with the patent fact that a nuisance has been created in Tama county; and, although the act which brings about this result was committed in Marshall county alone, it comes clearly within the statute (Code, section 5157) which provides that: "When a public offense is committed partly in one county and partly in another or when the acts or effects constituting or requisite to the consummation of the offense occur in two or more counties, jurisdiction is in either county except as otherwise provided by law." That such is the meaning of the statute was squarely decided in *State v. Smith*, 82 Iowa, 423,—a case practically identical with this, growing out of the corruption of the same stream, in the same manner, by a former proprietor of the same glucose works. Appellant argues that this case is to be distinguished from *State v. Smith*, in that it now

affirmatively appears there was a completed offense in Marshall county.    But it must not be overlooked that the defendant is upon trial for corrupting the river in Tama county, and the impurity of the stream in Marshall county, though proceeding from the same cause, is immaterial in this case, save as it may serve to show the connection between defendant's acts and the "effects constituting or requisite to the consummation" of the nuisance in the county where the indictment was found.    Any other interpretation of the statute would not only do violence to the language of the act, but might easily bring about the most intolerable results.    Some great factory situated upon the bank of a stream may so corrupt and poison its waters as to destroy their value and usefulness to the people and property owners along its course through several counties; and if, by reason of the owner's influence, or by the apathy of local authority, prosecutions can be avoided in the local jurisdiction where the wrongful act is initiated, the other jurisdictions would, upon defendants theory, be wholly without redress.    Such, we think, cannot have been the intention of the legislature, and we find no warrant for placing such construction upon the statute.    We have no doubt of the jurisdiction of the district court of Tama county to entertain the proceedings.

III.    In proof of the corporate capacity of the defendant the state was permitted to introduce in evidence a copy of the certificate of organization of the Glucose Sugar Refining Company in the state of New Jersey, such paper being certified to by the secretary of state as a true copy of the original filed and remaining in his office.

The admission of this testimony is assigned as error by appellant.    Whether the ruling of the trial court in this respect be technically correct, we think it unnecessary to decide.    The state was not required to prove the legal incorporation of the defendant.    The case is not within the

rule of *State v. Newland*, 7 Iowa, 242, and other precedents of that class.   In those cases the allegations of corporate capacity which the state was held to prove had reference alone to the alleged criminal act.   Here the allegation amounts to no more than a naming of the defendant,—a description of the person against whom the indictment is directed.   The defendant has appeared to such indictment, and entered a plea thereto of not guilty. Having so answered, it cannot, upon the trial, avail itself of a failure, if any, of the state to prove its alleged name or corporate capacity.   1 McClain, Criminal Law, 185; *State v. Western North Carolina R. Co.*, 95 N. C. 602.   It is charged as a corporation; it appears and pleads as a corporation; and it is difficult to understand how it can be prejudiced by failure to prove its own existence.   Such being the case, the ruling complained of could not have prejudiced the defendant, even if erroneous.

IV.   It is further objected to the introduction of the copy of the certificate of corporate organization that it bore no revenue stamp, and was, therefore, inadmissible as evidence.   For the reasons stated in the last preceding paragraph, this ruling, even if erroneous, was without prejudice.   But we think the objection was not well taken.   It is true that under the revenue act of 1864, substantially identical in this respect with the act of 1898, this court held that an unstamped instrument could not be admitted in evidence.   *Hugus v. Strickler*, 19 Iowa, 414; *City of Muscatine v. Sterneman*, 30 Iowa, 526.   But this holding was thereafter overruled in *Mitchell v. Insurance Co.*, 32 Iowa, 421.   The rule, as laid down in the latter case, is that, to exclude the instrument from evidence, the failure to affix a stamp must appear to have been with intent to defraud the revenue, and that such intent will not be presumed.   That doctrine was thereafter repeatedly affirmed.   *Ricord v. Jones*, 33 Iowa, 26; *Ogden v. Forney*, 33 Iowa, 205; *Brown v. Scott*, 34 Iowa, 575; *Morgan v.*

*Graham*, 35 Iowa, 213; *Works v. Hershey*, 35 Iowa, 340; *Collins v. Valleau*, 79 Iowa, 626; *Harvey v. Wieland*, 115 Iowa, 564.   We do not think there is any good reason for placing a less liberal construction upon the act of 1898. Indeed, it would appear to be the prevailing opinion that congress has no power to prescribe rules of evidence for state courts, and that the provisions of the stamp act in this respect are not intended to govern such tribunals. See an exhaustive collection of the decisions upon this point in note to *Knox v. Rossi*, 25 Nev. 96 (48 L. R. A. 305, s. c. 57 Pac. Rep. 179, 83 Am. St. Rep. 566).   Upon either theory the ruling of the trial court was correct.

V.   One Brechbill, having testified that he was employed by defendant in or about the glucose works, was permitted to say, in answer to a question, that the defendant was the successor of the Firmenich Manufacturing Company, a former proprietor of said works; and upon this ruling error is alleged.   It should be said that, before the witness made answer, he was directed by the court to speak only of his personal knowledge. The statement made would, therefore, appear to be entirely competent, and the only question which can be raised is upon its materiality.   The purpose of the testimony is not entirely clear; but we are unable to see how it could work any harm to the defendant.   The only argument offered in support of the objection is that "it did not aid in deciding any question in the case, but brought in foreign matter, and played upon an old and bitter feeling against the Firmenich Company."   We hardly think this objection is urged with much confidence in its soundness.   It is not conceivable that the verdict of the jury was or could have been influenced by this trifling matter.   Indeed, except the suggestion of counsel, there is nothing whatever in the record to indicate that the reputation and standing of the Firmenich Company was not of the most spotless and beneficent character.   We cannot presume it to have been otherwise.

We find no prejudicial error in any of the matters argued by counsel. The judgment of the district court is AFFIRMED.