COCKER v. NEW YORK, O. & W. RY. CO.

(District Court, S. D. New York. June 15, 1918.)

1. COURTS ⬤⟳274—DISTRICT OF SUIT—CARRIERS UNDER FEDERAL CONTROL.
    Suit against carrier while under federal control, brought, after promul-
    gation of and contrary to General Orders Nos. 18 and 18a of the Director
    General of Railroads, in a county or district other than where the cause of
    action arose, or where plaintiff resided when it accrued, will be dismissed.

2. ACTION ⬤⟳68—STAY OF TRIAL—CARRIER UNDER FEDERAL CONTROL.
    Under General Order No. 26 of Director. General of Railroads, as to
    staying trial, on showing that just interests of government will be preju-
    diced by present trial of action against carrier under federal control pend-
    ing in a county or district other than where the cause of action arose or
    plaintiff then resided, but allowing a new action in the other county or
    district, stay depends on the circumstances of each case; the primary
    consideration being the situation of the government relative to railroad
    witnesses leaving their work.

3. ACTION ⬤⟳68—STAY OF TRIAL—CARRIER UNDER FEDERAL CONTROL.
    Under circumstances of case, held, trial of action against railroad,
    brought in New York, for injury, at Scranton, Pa., of a boy then residing
    there, should be stayed, under General Order No. 26 of the Director Gen-
    eral of Railroads.

Action by Charles Cocker, Jr., an infant under the age of 14 years,
by Charles Cocker, his guardian ad litem, against the New York, On-
tario & Western Railway Company. On motion to stay trial. Mo-
tion granted.

Watts, Oakes & Bright, of Middletown, N. Y., for the motion.
William L. Schneider, of New York City (Edward J. McCrossin,
of New York City, of counsel), opposed.

. MAYER, District Judge. This is a motion by the defendant to
stay the trial of this action during the continuance of federal con-
trol over the defendant Railway Company. The motion is made in
view of General Order No. 26, issued by the United States Railroad
Administration, acting by the Director General of Railroads.

Several motions coming under General Orders 18, 18a, and 26 have
been disposed of by me from the bench without a written opinion,
but I have stated orally my reasons for granting or denying motions,
as the case may be.

In this memorandum, for the information of the bar, I shall deal,
not only with the facts particularly applicable to this case, but shall
restate what I have already endeavored to make clear in oral state-
ments from the bench.

It is unnecessary to review the legislation which created the United
States Railroad Administration and the office of Director General.
Under the act certain authority was conferred upon the Director Gen-
eral, and I shall assume that he had the power to make General Or-
ders 18, 18a, and 26, and in such circumstances such General Orders,
when and if lawfully made, have the force and effect of law.  Gen-

eral Orders 18 and 18a are prospective, and deal with actions thereafter begun. These orders are as follows:

"United States Railroad Administration.

"Office of the Director General, Washington.·

"April 9, 1918.

"General Order No. 18.

"Whereas, the act of Congress approved March 21, 1918, entitled 'An act to provide for the operation of transportation systems while under federal control,' provides (section 10) 'that carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or with any order of the President. * * * . But no process, mesne or final, shall be levied against any property under such federal control'; and

"Whereas, it appears that suits against the carriers for personal injuries, freight and damage claims, are being brought in states and jurisdictions far remote from the place where plaintiffs reside or where the cause of action arose, the effect thereof being that men operating the trains engaged in hauling war materials, troops, munitions, or supplies are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes for a week or more, which practice is highly prejudicial to the just interests of the government and seriously interferes with the physical operation of the railroads, and the practice of suing in remote jurisdictions is not necessary for the protection of the rights or the just interests of plaintiffs:

"It is therefore ordered, that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resides, or in the county or district where the cause of action arose.

"W. G. McAdoo, Director General of Railroads."

"United States Railroad Administration.

"Office of the Director General, Washington.

"April 18, 1918.

"General Order No. 18a.

"General Order No. 18, issued April 9, 1918, is hereby amended to read as follows:

" 'It is therefore ordered that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district where the cause of action arose.'

"W. G. McAdoo, Director General of Railroads."

[1] It will be seen from the foregoing that this court will dismiss any case brought after a promulgation of the foregoing orders in a county or district elsewhere than where the plaintiff resided at the time of the accrual of the cause of action or where the cause of action arose. There is no difficulty in construing General Order No. 18 as amended by General Order No. 18a. General Order 26 is as follows:

"United States Railroad Administration.

"Office of the Director General, Washington, D. C.

"May 23, 1918.

"General Order No. 26.

"Whereas, the act of Congress approved March 21, 1918, entitled 'An act to provide for the operation of transportation systems while under federal con-

trol,' provides (section 10) 'that carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act * * * or with any order of the President. * * * But no process, mesne or final, shall be levied against any property under such federal control,' and authorizes the President to exercise any of the powers by said act or theretofore granted him with relation to federal control through such agencies as he might determine; and

"Whereas, by a proclamation dated March 29, 1918, the President, acting under the Federal Control Act and all other powers him thereto enabling, authorized the Director General, either personally or through such divisions, agencies, or persons, or in the name of the President, to issue any and all orders which may in any way be found necessary and expedient in connection with the federal control of systems of transportation, railroads, and inland waterways as fully in all respects as the President is authorized to do, and generally to do and perform all and singular acts and things and to exercise all and singular the powers and duties which in and by the said act, or any other act in relation to the subject hereof, the President is authorized to do and perform; and

"Whereas, it appears that there are now pending against carriers under federal control a great many suits for personal injury, freight and damage claims, and that the same are being pressed for trial by the plaintiffs in states and jurisdictions far removed from the place where the persons alleged to have been injured or damaged resided at the time of such injury or damage, or far remote from the place where the causes of action arose, the effect of such trials being that men operating the trains engaged in hauling war materials, troops, munitions, or supplies are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes for a week or more, which practice is highly prejudicial to the just interests of the government and seriously interferes with the physical operation of railroads, and the practice of trying such cases during federal control in remote jurisdictions is not necessary for the protection of the rights or the just interests of plaintiffs:

"It is therefore ordered that upon a showing by the defendant carrier that the just interests of the government would be prejudiced by a present trial of any suit against any carrier under federal control, which suit is not covered by General Order No. 18, and which is now pending in any county or district other than where the cause of action arose or other than in which the person alleged to have been injured or damaged at that time resided, the suit shall not be tried during the period of federal control: Provided, if no suit on the same cause of action is now pending in the county or district where the cause of action arose, or where the person injured or damaged at that time resided, a new suit may, upon proper service, be instituted therein; and if such suit is now barred by the statute of limitations, or will be barred before October 1, 1918, then the stay directed by this order shall not apply unless the defendant carrier shall stipulate in open court to waive the defense of the statute of limitations in any such suit which may be brought before October 1, 1918.

"This order is declared to be necessary in the present war emergency. In the event of unnecessary hardship in any case, either party may apply to the Director General for relief, and he will make such order therein as the circumstances may require consistent with the public interest.

"This order is not intended in any way to impair or affect General Order No. 18, as amended by General Order No. 18a.

"W. G. McAdoo, Director General of Railroads."

It will be noted that in both General Order 18 and General Order 26 the preambles call attention to the fact that actions have been brought at places far remote from where plaintiffs reside or where the cause of action arose, with the result that necessary railroad men are required to travel "sometimes hundreds of miles," necessitating

absence from their trains "for days and sometimes for a week or more." It is also stated that the practice of trying such cases during federal control "in remote jurisdictions" is not necessary for the protection of the rights or the just interests of plaintiffs.

[2] General Order No. 26 clearly indicates that the court is not expected to act automatically, even if there were power to compel it so to do, which, of course, would not be suggested, but that in each case, upon the facts shown, the court is to determine whether "the just interests of the government would be prejudiced by a present trial" of the suit.

It clearly was not the intention of the United States Railroad Administration to deprive those having claims against railroads of their day in court, nor to prevent, wherever possible, a speedy disposition of pending actions. Practically no case against a defendant railroad, whether in tort or in contract, can be satisfactorily tried without the presence in the courtroom, and consequently the absence from the railroad, of some one or more witnesses. The requirements of the railroad, in so far as it is concerned with the movement of war materials and supplies, or any other part of its operation or administration deemed important by the government, can easily be met by the trial judge so arranging and conducting his calendar as to necessitate a minimum period of absence of railroad employés from railroad work. If, for instance, an accident occurred at the terminal of a railroad in New York City, whether the case was brought in the United States District Court or in a state court, the railroad witnesses would necessarily be absent for such period of time as their presence would be necessary in the courtroom. To hold, under such circumstances, that the case should be stayed until after the expiration of federal control, would be, in effect, to deprive the plaintiff of his day in court.

Similarly, in view of the quick communication between, for instance, Jersey City and the courthouse of this court, the trial of a case requiring the bringing over of witnesses from Jersey City would occupy very little more time, if any, of the railroad witnesses, than that which would be occupied if the witnesses were brought from the New York terminals of the Pennsylvania, New York Central, or other railroads. The point is that in such cases it would be manifestly against the purpose and spirit of the order to stay trials of pending actions until the expiration of federal control, although as to trial on a particular date it may be well assumed that the trial judge will accommodate his calendar to the legitimate requirements and necessities of the railroad.

To illustrate with two cases which require different treatment, the following examples, which were before me for consideration, may be noted: In one case the accident happened near Pittsburg, the plaintiff resided in or near Pittsburg, the railroad men were engaged in important railroad service having to do with the movement of war materials and troops, and obviously it would be prejudicial to the best interests of the government that the railroad should be required to bring these men to New York, when a trial could be had in the appropriate forum in Pennsylvania. In another case the accident hap-

pened at Perth Amboy, N. J., and the railroad witnesses were some three, four, or possibly five men employed at Perth Amboy, and whether the case was tried in Newark or·New York would make very little difference in time. In this case plaintiff was a railroad employé, and had suffered shocking injuries, which it is claimed fully incapacitated him, and the case was well up on the calendar. To require such a plaintiff to start all over again and bring his action in New Jersey, delaying him perhaps for many months, would be the kind of result which I am confident General Order No. 26 never contemplated. In cases of grave injury, speedy trials are important, to prevent the injured person from becoming a public charge, a result which imposes an additional burden upon the other members of the community.

Counsel for the railroad company in many instances have deemed it necessary to produce in court all of the members of the train crew, even though many of them know nothing concerning the accident; but this has doubtless been a necessary precaution to counteract any reference by attorneys for plaintiff as to the absence of some members of the crew. In every case where I have denied the motion for a stay, the attorney for plaintiff has stipulated that no reference will be made to the absence of any witness who, according to the statement of counsel for the railroad company, knows nothing about the accident. It is impossible to lay down a general rule in this regard, but on the facts of each case as presented motions in proper cases can be denied upon appropriate conditions, and in dealing with the subject sensibly and practically there should be no real difficulty in making such disposition in each case upon its own facts as may seem just and proper.

The questions here involved, in any event, are confined only to pending actions, and from my point of view many elements must be taken into consideration. Primarily there must be, of course, the situation of ·the government, which at this time requires first consideration, and to whose necessities private rights must yield; but, in addition, the position of the case on the calendar, the physical and financial condition of plaintiff, the number of witnesses for the railroad, the character of the work in which they are employed, the probable length of the trial, and the distance from the place of employment of the railroad employés to the court house, are all matters which will have a bearing on the question as to whether or not the action shall be stayed.

In the foregoing I have not attempted to outline all the possibilities which may arise, or all of the considerations which may be relevant; but I have merely attempted to sketch certain broad considerations for the guidance of those concerned with this subject-matter.

Coming, now, to the case at bar, it appears that the plaintiff is an infant about 14 years of age, now suing by his guardian for an injury which occurred at Scranton, Pa., on August 9, 1916. Plaintiff and his guardian then resided and now reside in Scranton, Pa. Four witnesses of the railroad are actively employed by it in its freight service, and are at present engaged in moving coal, freight, munitions, and other war materials at and in the vicinity of Mayfield Yard, in Pennsylvania. The most important branch of the defendant railroad at

this time is the one running from Cardozia, N. Y., to Scranton, Pa., over which are hauled many carloads of coal from the mines in Pennsylvania, and in which freight service the railroad witnesses are engaged. The showing is well made that the absence of these employés at this time would be serious, because defendant is shorthanded, owing to the large number of employés who have gone into the military service, or who have left to obtain positions at shipyards and other industries performing war service, for which larger compensation is paid. The engineer, the fireman, the conductor, and one of the trainmen are all necessary and material witnesses concerning the accident.

Defendant further submits the affidavit of a physician to the effect that, although the infant plaintiff's left leg has been amputated above the knee, he is strong and robust, and his heart, lungs, and abdomen are normal, and he is otherwise physically normal. Defendant also submits an affidavit from one O'Boyle, presumably an investigator, that he has seen the infant plaintiff, and called upon him with the physician, and that the boy is regularly attending school.

In this case it is manifest that no one is dependent for support upon the plaintiff, and he does not need any medical attendance. On the other hand, the showing made by the railroad indicates beyond question that the just interests of the government would be prejudiced by a present trial of the action in this jurisdiction. An action can be promptly brought in Scranton, where plaintiff resides, and where the witnesses of defendant will be available at a minimum of inconvenience.

[3] In such circumstances I am of opinion that the just interests of the government require that the motion should be granted.

Motion granted.

### Addendum.

Since writing the foregoing I note the opinion of Judge Manton, in Harnick v. Pennsylvania Railroad Co., 254 Fed. 748, filed June 14, 1918. In that opinion I find agreement with the view expressed by me, supra, that each case must be considered on its own merits.