## INVALIDITY OF ORDER BY DIRECTOR GENERAL OF RAILWAYS.

Common Pleas Court of Hancock County.

J. R. EYESTONE v. CLEVELAND, C., C. & ST. L. RY. ET AL.

Decided, January Term, 1919.

*Railways—Order of Director General Limiting Venue—Conflicts with Jurisdiction of the State Courts as Fixed by the Ohio Code—And is also a Delegation of Legislative Power.*

1. On April 9, 1918, the Director General of Railroads issued what is known as general order No. 18, based on certain facts therein stated and directing that "all suits against carriers while under federal control must be brought in the county or district where the plaintiff resides or in the county or district where the cause of action arose." Assuming said order to be valid and that the reasons for its observance do not exist in the particular case, whether the carrier in its own interest may waive the protection thereof and enter its voluntary appearance in the action by filing an answer taking issue with the petition—Quaere?

2. The said general order No. 18 is invalid as applied to state courts for two reasons: first, its effect would be to suspend the operation of Section 11273, General Code of Ohio, fixing the territorial jurisdiction of the courts of common pleas of the state; and second, the act of Congress, approved March 21, 1918, under the authority of which the order was made, would be a delegation of legislative power.

*A. G. Fuller*, for plaintiff.

*Wilson & Rector* and *F. C. Amos* and *Burket & Burket*, for defendant.

DUNCAN, J.

Heard on motion to dismiss for want of jurisdiction and demurrer to fourth defense.

This action was brought May 28, 1918, and is for tort upon which the cause of action arose May 17, 1917. The plaintiff resides in Wyandot county, and the cause of action arose there.

The defendants are common carriers of freight and passengers. On June 27, 1918, the defendants filed motion to dismiss the action upon the ground that the railroads of the defendants were under government control and that this is a personal injury case and therefore within the class defined by general order No. 18 of the Director General of Railroads, dated April 9, 1918, in which it is ordered that ''all suits against carriers while under federal control must be brought in the county or district where the plaintiff resides or in the county or district where the cause of action arose.''

On July 11, 1918, the defendants filed a joint and several answer taking issue with the petition upon the merits and as a fourth separate defense sets up the said general order No. 18 as to the right of venue.

This motion should be overruled.

1.  Whether the defendants have voluntarily submitted themselves to the jurisdiction by pleading to the merits—*quaere*.

2.  The order of the Director General as to venue of actions is invalid so far as it relates to state courts.

The motion is in effect a plea to the jurisdiction. It is not made by the Director General of Railroads but by the defendants themselves and in their own interest.

The court could well take judicial notice that the facts which furnished the reason for the making of said order No. 18 were not true in this particular case; and not being true, and assuming the said order to be valid, the question arises whether the defendants had the power to waive the right as being in harmony with the purpose of the order and for their benefit to do so. It is claimed that they have waived their motion and entered their appearance by pleading to the merits, and the following cases are cited in support of this contention: *Harrington* v. *Heath*, 15 Ohio, 483; *Mahalm* v. *Marshall*, 29 Ohio St., 611; *O'Neal* v. *Blessing*, 34 Ohio St., 33; *Elliott* v. *Lawhead*, 43 Ohio St., 171; *Ohio Southern Ry.* v. *Morey*, 47 Ohio St., 207; *Long* v. *Newhouse*, 57 Ohio St., 348.

But if the effect of the order is to make the action local rather than transitory; or the question is one which must be made by

answer rather than demurrer, the principle contended for would not apply. Having other reasons for overruling the motion, these questions are not passed upon.

The act of Congress approved August 29, 1916, by which the president was authorized to take possession of the railroads, Section 1648, Barnes' Federal Code, reads as follows:

"The president, in time of war, is empowered, through the secretary of war, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

On April 6, 1917, Congress declared a state of war between the United States and the Imperial German government, and on December 7, 1917, between the United States and the Imperial and Royal Austro-Hungarian government.

On December 26, 1917, the president issued a proclamation by which he took control of the railroads at 12 o'clock of December 28, 1917, through the secretary of war, and also directed that their control should be exercised by William H. McAdoo, whom he designated "Director General of Railroads."

The act of Congress approved March 21, 1918, relating to the liabilities and actions against carriers, Section 10163, Barnes' Federal Code, so far as it has reference to court actions, reads as follows:

"Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the president. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter in-

stituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any act of Congress or official order or proclamation relating thereto shall upon motion of either party be transferred to the court in which it was originally instituted. But no process, mesne or final shall be levied against any property under such federal control.''

And the latter part of Section 10162 of the same act reads as follows:

''And the President, in addition to the powers conferred by this act, shall have and is hereby given such other and further powers necessary or appropriate to give effect to the powers herein and heretofore conferred. The provisions of this act shall also apply to any carriers to which federal control may be hereafter extended.''

Afterwards, on April 9, 1918, the director general under authority of the part of said Section 10163 above quoted, and referring thereto, with the preamble giving the reasons therefor, made the said general order No. 18, as follows:

''Whereas it appears that suits against the carriers for personal injuries, freight and damage claims, are being brought in states and jurisdictions far remote from the place where plaintiffs reside or where the cause of action arose; the effect thereof being that men operating the trains engaged in hauling war materials, troops, munitions, or supplies are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes for a week, or more; which practice is highly prejudicial to the just interests of the government and seriously interferes with the physical operation of the railroads; and the practice of suing in remote jurisdictions is not necessary for the protection of the rights or the just interests of plaintiff.

''It is therefore ordered, that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resides or in the county or district where the cause of action arose.''

If this motion is granted, it is a holding to the effect that this order of the Director General takes precedence of all state laws on the subject, and in this particular case, suspends the operation of Section 11273, General Code of Ohio defining the territorial jurisdiction of the courts of common pleas of this state. And Section 11273 reads as follows:

"An action against * * * a railroad company owning or operating a railroad * * * within this state * * * may be brought in any county through or into which * * * such railroad * * * extends."

The right to maintain an action in any particular court is subject to the legislative will. Congress has uniformly exercised this power as to the federal courts, but it is the province of the state legislatures to do this for their respective states. At no time has Congress ever attempted to perform this office for any state. This is the first time, to my knowledge, that the venue of court actions has ever been attempted by executive order. That the executive order was valid under this legislation as applied to the federal courts, has been decided several times, but each time the court was specific and disclaimed any intention of applying the principle to the state courts. *Wainwright* v. *Pennsylvania Ry.* 253 Fed., 459; *Cocker* v. *New York & O. Ry.*, 253 Fed., 676. *Contra. Friensen* v. *Chicago, Rhode Island & Pac. Ry.*, 254 Fed., 875.

The states were in existence before the adoption of the Constitution, and possessed and exercised nearly all the powers of sovereignty. The underlying principle of the Constitution is that the powers of the national government are enumerated therein and that those not there enumerated are reserved to the states. And lest there might be any possible question of this in the mind of those who might wield any portion of this authority, it was declared by the tenth article of the amendments, that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people." To ascertain, therefore, whether any power assumed by the government of the United States is

rightfully assumed, the Constitution is to be examined in order to see whether expressly or by fair implication the power has been granted, and if the power does not appear, the assumption must be held unwarranted. They are maintained by limiting the exercise of federal power to the sphere which the Constitution expressly or by fair implication assigns to it. Cooley's Principles of Constitutional Law, pp. 29-36.

The principle is illustrated in the following cases involving the validity of an act of Congress as applied to state courts requiring instruments to be stamped as a necessary prerequisite to their admission in evidence: *Craig* v. *Dimock,* 47 Ill., 308. From the opinion of Breese, C. J., at page 312:

"The object of this act and of all other acts of Congress of like nature, is to raise money to support the government, and pay its debts, and for this purpose vast powers were granted by the states in framing the Constitution of the United States, to the Congress established by it; but the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, were reserved to the states respectively, or to the people.

"While, then, the power to levy taxes for the purposes indicated in the Constitution may be admitted, it can not be admitted that it can be so exercised as to take from the domain of state legislation all such subjects as are properly confided to it, and the care of which has not been surrendered to the Congress by the states. Of this nature are the processes of the state courts in judicial proceedings."

*Sporrer* v. *Eipler,* 48 Tenn. (1 Heisk.), 633 (59 Pac., 179), From the opinion of Turney, J.:

"The states are sovereign within their own limits, and foreign to each other, regarding them as local governments. *Bank of U. S.* v. *Daniel,* 37 U. S. (12 Pet.), 33 (9 L. Ed., 989). * * * There has been no delegation by states to Congress of power or authority to legislate for the internal regulation of the states, nor are the people of the states prohibited by the Constitution from creating and regulating the courts of the states and declaring the rules for their government. * * * If Congress may, by its enactments, make or change the rules of evidence as applicable to the courts of the states in any one particular, it may in all things. It may totally abolish existing rules of evi-

dence and practice and substitute others new and wholly different.''

To the same effect are: *Southern Ins. Co.* v. *Estes,* 106 Tenn., 472 (62 S. W., 149; 52 L. R. A., 915; 82 Am. St., 892; *Duffy* v. *Hobson,* 40 Cal., 240 (6 Am. Rep., 617; *Carpenter* v. *Snelling,* 97 Mass., 452; *State* v. *Glucose Sugar Co.,* 117 Ia., 524 (91 N. W., 794); *Hunter* v. *Cobb,* 64 Ky. (1 Buch), 239; *Knox* v. *Rossi,* 25 Nev., 96 (57 Pac., 179; 48 L. R. A., 305; 83 Am. St., 566); *Wallace* v. *Crovens,* 34 Ind., 534.

While Congress has power to declare war and to make all laws which may be necessary and proper for the execution of this power, Article I, Section 8, Constitution, there is certainly some limit to it, but assuming that it has the power to suspend the operation of state laws in the emergency, it has not done so in this respect, and it has not expressly delegated this power either to the President or the director general, and it has not impliedly, unless it is conferred upon the President by the provisions above quoted authorizing him to make orders for the exercise of government control. It would seem that in an act of Congress in which a step so far reaching is contemplated that the authority should be express. But whether implied or express, it would be a delegation of legislative power and hence within the restriction of the powers of Congress.

''Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been entrusted can not relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.'' Cooley, Constitutional Limitations (7 Ed.), p. 163, and cases there cited, among them, *Cincinnati, W. & Z. Ry.* v. *Clinton Co.* (*Comrs.*), 1 Ohio St., 77.

''That Congress can not delegate legislative power to the President is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution.''

This is from the opinion of Justice Harlan in *Field* v. *Clark,* 143 U. S., 649, where the act of Congress in question gave the President the right to suspend the operation of a law providing for the admission of foreign sugar duty free from any country which he found imposed exactions and duties on the agricultural and other products of the United States to be reciprocally unequal and unreasonable. And the justice goes on to say:

"Congress itself prescribed, in advance, the duties to be levied, collected and paid, on sugar, molasses, coffee, tea or hides produced by or exported from such designated country while the suspension lasted. Nothing involving the expedience or the just operation of such legislation was left to the determination of the President."

This is the distinction running through all the cases, *United States* v. *Atchison, T. & Santa Fe Ry.,* 324 U. S., 476 (58 L. Ed., 1408, 1422; 34 Sup. Ct., 986); *Union Bridge Co.* v. *United States,* 204 U. S., 364 (51 L. Ed., 523; 27 Sup. Ct., 367); *St. Louis, I. M. & S. Ry.* v. *Taylor,* 210 U. S., 281 (52 L. Ed., 1061; 28 Sup. Ct., 616); *Monongahela Bridge Co.* v. *United States,* 216 U. S., 177 (54 L. Ed., 435; 30 Sup. Ct., 356); *United States* v. *Grimaud,* 220 U. S., 506 (55 L. Ed., 563; 31 Sup. Ct., 480).

But here the only legislation in this behalf was by way of reservation of rights to the public against carriers whether arising under state or federal laws or at common law, "except in so far as may be inconsistent with the provision of this act or any other act applicable to such federal control or with any other order of the President," with the added provision that "No process, mesne or final, shall be levied against any property under federal control." Section 10163, U. S. Rev. Stat. This is the grant of power upon which the said general order No. 18 is based. Unless this may be considered as a delegation of power to the President to make the order in question, the order of the director general was issued without authority. And if it is considered within this delegation of authority, it is void as within the restriction against the delegation of legislative power. It is certainly a legislative function to fix the jurisdiction of our courts, either judicial or territorial, and it is as much a

legislative function to take it away, to change it or to suspend its operation as it is to confer it in the first instance.

Here, the act did not provide for the suspension of the operation of the territorial jurisdiction of the state courts dependent upon a state of facts to be determined by the President or other officials, as was done in the act in question in *Field* v. *Clark, supra,* the distinction which tests the validity of all such legislation. But the director general proceeds to make a finding of facts where the privileges of the citizen under said Section 11273, G. C., are "sometimes" taken advantage of to the detriment of the operation of a railroad, and then based upon that finding, makes a general order, not applicable alone to that situation, but "that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resides, or in the county or district where the cause of action arose."

The question is not as to what the statute of Ohio ought to be in such cases, nor what power the director general ought to have in such matters. It is, did he, as a matter of law, have the power to suspend the operation of the statute of Ohio fixing the territorial jurisdiction of the courts of common pleas of this state? This question is especially pertinent where, as here, the cause of action arose prior to the passage of the act of Congress under which the order was made. The court takes judicial notice that one of the facts upon which the order was made exist in this particular case, and that so far as the convenience of the trainmen is concerned, it will be as near the scene of the accident and as convenient for them to attend the trial in this county as in Wyandot. This situation, however, is foreclosed against the plaintiff by the absolute order of the director general.

For the reason then that there would be a conflict of jurisdiction between state and nation if this order was intended to extend to state courts, and that it must have a retroactive operation, if applied here, the right of Congress and the President under the law, should be more strictly construed; and being of the opinion also that the said act of Congress, if it extends

thus far, is an attempted delegation of legislative power, the exercise of which would have the effect to suspend the operation of a state law, and thereby to encroach upon the sphere of sovereignty residing in the state, forces the conclusion that the said general order No. 18 was not intended to operate against state laws, and that if it was, it is invalid.

Holding these views, the motion to dismiss the action will be overruled. Exceptions.

And for the same reasons the demurrer to the fourth defense of the answer will be sustained.