PRATT v. RAILWAY COMPANY.

1. The liability of an intermediate common carrier for the safety of goods delivered to him for carriage is discharged by their delivery to and acceptance by a succeeding carrier or his authorized agent.
2. If there is an agreement between two persons, occupying the relative positions of intermediate and succeeding carrier, that property intended for transportation by the latter may be deposited at a particular place without express notice to him, such deposit amounts to notice, and is a delivery.
3. The acceptance by the succeeding carrier is complete and his liability fixed whenever the property thus, with his assent, comes into his possession.

ERROR to the Circuit Court of the United States for the Eastern District of Michigan.

The facts are stated in the opinion of the court.

*Mr. William Jennison* for the plaintiffs in error.
*Mr. Isaac P. Christiancy, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

The Grand Trunk Railway Company is engaged as a common carrier in the transportation of persons and property. This action seeks to recover damages for a violation of its duty in respect to certain merchandise shipped from Liverpool to St. Louis, and carried over its road from Montreal to Detroit. The goods reached the city of Detroit on the 17th of October, 1865, and on the night of the 18th of the same month were destroyed by fire.

The defendant claims to have made a complete delivery of the goods to the Michigan Central Railroad Company, a succeeding carrier, and thus to have discharged itself from liability before the occurrence of the fire.

If the liability of the succeeding carrier had attached, the liability of the defendant was discharged. *Ransom* v. *Holland*, 59 N. Y. 611; *O'Neil* v. *N. Y. Central Railroad Co.*, 60 id. 138.

The question, therefore, is, Had the duty of the succeeding carrier commenced when the goods were burned?

The liability of a carrier commences when the goods are delivered to him or his authorized agent for transportation, and are accepted. *Rogers* v. *Wheeler*, 52 N. Y. 262; *Grosvenor* v. *N. Y. Central Railroad Co.*, 59 id. 34.

If a common carrier agrees that property intended for transportation by him may be deposited at a particular place without express notice to him, such deposit amounts to notice, and is a delivery. *Merriam* v. *Hartford Railroad Co.*, 24 Conn. 354; *Converse* v. *N. & N. Y. Tr. Co.*, 33 id. 166.

The liability of the carrier is fixed by accepting the property to be transported, and the acceptance is complete whenever the property thus comes into his possession with his assent. *Illinois Railroad Co.* v. *Smyser*, 38 Ill. 354.

If the deposit of the goods is a mere accessory to the carriage, that is, if they are deposited for the purpose of being carried without further orders, the responsibility of the carrier begins from the time they are received; but, when they are subject to the further order of the owner, the case is otherwise. *Ladere* v. *Griffith*, 25 N. Y. 364; *Blossom* v. *Griffin*, 13 id. 569; *Wade* v. *Wheeler*, 47 id. 658; *Michigan Railroad* v. *Schurtz*, 7 Mich. 515.

The same proposition is stated in a different form when it is said that the liability of a carrier is discharged by a delivery of the goods. If he is an intermediate carrier, this duty is performed by a delivery to the succeeding carrier for further transportation, and an acceptance by him. Auth. *supra.*

The precise facts upon which the question here arises are as follows: —

At the time the fire occurred, the defendant had no freight room or depot at Detroit, except a single apartment in the freight-depot of the Michigan Central Railroad Company. Said depot was a building several hundred feet in length, and some three or four hundred feet in width, and was all under one roof. It was divided into sections or apartments, without any partition-wall between them. There was a railway track in the centre of the building, upon which cars were run into the building to be loaded with freight. The only use which the defendant had of said section was for the deposit of all goods and property which came over its road, or was delivered for shipment over it. This section, in common with the rest of the building, was under the control and supervision of the Michigan Central Railroad Company, as hereinafter mentioned. The defendant employed in this section two men, who checked

freight which came into it. . All freight which came into the
section was handled exclusively by the employés of the Michigan Central Railroad Company, for which, as well as for the
use of said section, said defendant paid said company a fixed .
compensation per hundred-weight. Goods which came into
the section from defendant's road, destined over the road of the
Michigan Central Railroad Company, were, at the time of
unloading from defendant's cars, deposited by said employés of
the Michigan Central Railroad Company in a certain place in
said section, from which they were loaded into the cars of said
latter company by said employés when they were ready to receive them; and, after they were so placed, the defendant's
employés did not further handle said goods. Whenever the
agent of the Michigan Central Railroad Company would see
any goods deposited in the section of said freight-building set
apart for the use of the defendant, destined over the line of
said Central Railroad, he would call upon the agent of the defendant in said freight-building, and, from a way-bill exhibited
to him by said agent, he would take a list of said goods, and
would then, also, for the first time, learn their ultimate place
of destination, together with the amount of freight-charges due
thereon; that, from the information thus obtained from said
way-bill in the hands of the defendant's agent, a way-bill
would be made out by the Michigan Central Railroad Company
for the transportation of said goods over its line of railway, and
not before.

These goods were, on the 17th of October, 1865, taken from
the cars and deposited in the apartment of said building used
as aforesaid by the defendant, in the place assigned as aforesaid for goods so destined.

At the time the goods in question were forwarded from
Montreal, in accordance with the usage in such cases, a way-bill was then made out in duplicate, on which was entered a
list of said goods, the names of the consignees, the place to
which the goods were consigned, and the amount of charges
against them from Liverpool to Detroit. One of these way-bills was given to the conductor who had charge of the train
containing the goods, and the other was forwarded to the agent
of the defendant in Detroit. On arrival of the goods at Detroit,

the conductor delivered his copy of said way-bill to the checking-clerk of defendant in said section, from which said clerk checked said goods from the cars into said section. It was the practice of the Michigan Central Railroad Company, before forwarding such goods, to take from said way-bill in the custody of said checking-clerk, in the manner aforesaid, the place of destination and a list of said goods and the amount of accumulated charges, and to collect the same, together with its own charges, of the connecting carrier.

We are all of the opinion that these acts constituted a complete delivery of the goods to the Michigan Central Company, by which the liability of the Grand Trunk Company was terminated.

1. They were placed within the control of the agents of the Michigan Company.

2. They were deposited by the one party and received by the other for transportation, the deposit being an accessory merely to such transportation.

3. No further orders or directions from the Grand Trunk Company were expected by the receiving party. Except for the occurrence of the fire, the goods would have been loaded into the cars of the Michigan Central Company, and forwarded, without further action of the Grand Trunk Company.

4. Under the arrangement between the parties, the presence of the goods in the precise locality agreed upon, and the marks upon them, " P. & F., St. Louis," were sufficient notice that they were there for transportation over the Michigan road towards the city of St. Louis; and such was the understanding of both parties.

The cases heretofore cited in 20 Conn. 354, and 33 id. 166, are strong authorities upon the point last stated.

In the latter case, a railroad company and a steamboat company had a covered wharf in common, at their common terminus, used as a depot and a wharf; and it was the established usage for the steamboat company to land goods for the railroad, on the arrival of its boats in the night, upon a particular place in the depot, whence they were taken by the railroad company, at its convenience, for further transportation, both

companies having equal possession of the depot. There was no evidence of an actual agreement that the goods deposited were in the possession of the railroad company, and the goods in question had not been in the manual possession of the railroad company when they were destroyed by fire on the Sunday afternoon following their deposit on the previous night. It was held that there was a tacit understanding that the steamboat company should deposit their freight at that particular spot, and that the railroad should take it thence at their convenience. The delivery to the succeeding carrier was held to be complete, and a recovery against the first carrier for the loss of the goods was reversed.

In *Merriam* v. *Hartford Railroad Co.*, *supra*, it was held that if a common carrier agree that property intended for transportation by him may be deposited at a particular place without express notice to him, such deposit alone is a sufficient delivery; and that such an agreement may be shown by a constant practice and usage so to receive property without special notice.

The plaintiff contends that the goods were not in the custody and under the control of the Michigan road, for the reason that the case states that they " are in a section of the freight-depot set apart for the use of the defendant." This is not an accurate statement of the position. The expression quoted is used incidentally in stating that, when the agent of the Michigan road saw " goods deposited in the section of the freight-building set apart for the use of the defendant, destined on the line of said Central railroad, he would call upon the agent of defendant, and, from a way-bill," obtain a list of the goods, and their destination. Just how and in what manner it was thus set apart appears from the facts already recited. It was a portion of the freight-house of the Michigan Company, in which a precise spot was selected or set apart, where the defendant might deposit goods brought on its road and intended for transportation over the Michigan road, and which, by usage and practice and the expectation of the parties, were then under the control of the Michigan Company, and to be loaded on to its cars at its convenience, without further orders from the defendant.

We are of the opinion that the ruling and direction of the

circuit judge, that upon the facts stated the defendant was entitled to a verdict and judgment in its favor, was correct, and the judgment should be affirmed.

*Judgment affirmed.*