(89 South. 610)

## LOUISVILLE & N. R. CO. v. HOLMES.
### (8 Div. 343.)

(Supreme Court of Alabama. June 30, 1921.)

Injunction ⬤⟳26(4)—Railroad not entitled to injunction against prosecution of suits in two states by same plaintiff for injuries growing out of same accident.

Railroad being sued by injured person in two states for damages growing out of same accident cannot enjoin prosecution thereof, having a complete and adequate remedy at law.

Thomas, J., dissenting.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Bill by the Louisville & Nashville Railroad Company against Pearl F. Holmes to enjoin the prosecution of suits in Alabama and Georgia alleged to have grown out of the same accident. From a decree dissolving a temporary injunction dismissing the bill, complainant appeals. Affirmed.

See, also, 205 Ala. 47, 87 South. 574.

Eyster & Eyster, of Albany, for appellant.

The bill has equity and is filed by the proper party. 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Crim v. L. & N. R. I. Co., ante, p. 110, 89 South. 376; L. & N. v. Heidt Mueller (D. C.) 254 Fed. 749; (D. C.) 250 Fed. 280; (D. C.) 253 Fed. 676; Gen. Order No. 18; Supplemental Order 18a. The appeal should not be dismissed. 193 Ala. 234, 69 South. 428, Ann. Cas. 1918B, 554.

Callahan & Harris, of Decatur, for appellee.

The bill is without equity, as there can be no further recovery. 147 Ala. 703. The appeal ought to be dismissed. 39 South. 214; 140 Ala. 458, 37 South. 208.

PER CURIAM. The decisions in Missouri Pacific R. Co. et al. v. Ault (No. 252, June 1, 1921), 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. ——, and Charlton v. A. G. S., 89 South. 710,[1] demonstrate that appellant had a complete and adequate remedy at law.

The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, GARDNER, and MILLER, JJ., concur.

THOMAS, J. (dissenting). The appeal is from a decree dissolving injunction, sustaining demurrers, and dismissing the bill of the Louisville & Nashville Railroad Company v. Pearl F. Holmes, the plaintiff in suits filed in Georgia and Alabama, respectively, for one alleged injury occurring in this state.

The suit in the superior court of Fulton county, Ga., filed February 19, 1918, was returnable May 6th of that year. That in the circuit court of Morgan county, Ala., was of date June 26, 1918, and judgment therein for plaintiff was affirmed by this court on November 25, 1920. L. & N. R. Co. v. Holmes, 205 Ala. 47, 87 South. 574.

The instant bill, by the sole defendant in said suits against the plaintiff therein, was filed on January 28, 1919. The motion to dissolve, filed March 4, 1919, was sustained on January 3, 1921. Federal control was terminated by the act of February 28, 1920, which extended the time for suit "not later than two years from the date of the passage" of the act. Moon v. Hines, 87 South. 603, 604, 13 A. L. R. 1020;[2] 41 Stat. of. U. S. 1919-20, § 206 (a), p. 461. Federal Control Transportation Act was approved March 21, 1918 (U. S. Comp. St. 1918, §§ 3115¾a –3115¾p).

It is averred that plaintiff's injury was sustained on January 28, 1918, in the state of Alabama, where suit was instituted, where plaintiff and all the witnesses resided and were amenable to process; that a difference in the rules of law in Alabama and Georgia, as regards contributory negligence defeating a recovery, obtains and is pleaded (Weaver v. Ala. Gt. Sou. Ry., 200 Ala. 432, 76 South. 364); that the maintaining of two suits for the same injury by respondent (plaintiff at law) is contrary to the applicable general orders of the Director General of Railroads. As to this, the averments of the bill are:

That, in violation of general orders of the Director General of Railroads, "the respondent continues to maintain her case in the superior court of Fulton county, Ga., and has instituted a case for the recovery of same damages as alleged in her Georgia declaration in the circuit court of Morgan county; * * * that said act of the respondent in maintaining the * * * suit in Georgia causes this complainant and its successors undue harrassment and subjects it to the payment of court costs and other expenses;" that "said Pearl F. Holmes having knowledge of the facts herein averred and for the purpose of obtaining an unfair advantage over the Louisville & Nashville Railroad Company, which she was not entitled to receive under the laws of Alabama, and for the purpose of embarrassing it, and obtaining attendance of its witnesses upon a court, and for the purpose of causing it unnecessary and undue expense, caused said suit to be instituted in the said superior court of Fulton county, in the state of Georgia, and unless restrained by a proper order of this court will proceed with the said suit, and obtain an unfair advantage, which she is not lawfully entitled to receive under the laws of the state of Alabama and under the declaration of the President of the United

States and acts of Congress of the United States."

The prayer of the bill is that—

Respondent be required "to dismiss the case which she has pending in the superior court of Fulton county, Ga., and to pay all cost in said case before being allowed to proceed with the prosecution of her case against the complainant now pending in the circuit court of Morgan county, and * * * before being allowed to proceed with the prosecution of her case which she now has pending on the law side of the circuit court of Morgan county," Ala.

A general statement of public policy underlying the decisions touching suits against the Sovereign is that it may prescribe the terms and conditions on which it consents or grants the right to be sued, and the conditions on and the manner in which suit shall be conducted, and modify such conditions, grant or consent, or may withdraw its consent or conditions whenever it is supposed that justice to the public requires. Moon v. Hines, supra; Elmore v. Fields, 153 Ala. 345, 45 South. 66, 127 Am. St. Rep. 31; U. S. v. Clarke, 33 U. S. (8 Pet.), 436, 8 L. Ed. 1001; Murray v. Hoboken, etc., Co., 18 How. 272, 15 L. Ed. 372; Beers v. Arkansas, 20 How. 527, 15 L. Ed. 991; U. S. v. O'Keefe, 11 Wall. 178, 20 L. Ed. 131; Finn v. U. S., 123 U. S. 227, 8 Sup. Ct. 82, 31 L. Ed. 128; Austin v. U. S., 155 U. S. 417, 15 Sup. Ct. 167, 39 L. Ed. 206; Ball v. Halsell, 161 U. S. 72, 16 Sup. Ct. 554, 40 L. Ed. 622.

We take judicial knowledge of the federal statutes having application, the President's proclamation, the orders of the Director General of Railroads, as well as of the fact that the government had control of and was operating, pursuant to law, the transportation facilities and properties of the Louisville & Nashville Railroad Company at the time and place of plaintiff's injuries, President's Procs. Dec. 26, 1917, and Apr. 11, 1918 (U. S. Comp. St. 1918, 274, 275); for which the two suits were brought. Webb v. White Eng. Corp. 204 Ala. 429, 85 South. 729; Moon v. Hines, supra; Crim v. L. & N. R. Co., ante, p. 110, 89 South. 376.

The necessity for exclusive government control and operation of the transportation systems of corporations and private individuals during the war was stated by President Wilson in his address of January 4, 1918, before a joint session of the Houses of Congress, and he was supported in his view of exclusive governmental control by the courts. Nor. Pac. Ry. Co. v. State of N. Dak., 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Mo. Pac. Ry. Co. et al. v. Ault (No. 252, June 1, 1921) 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. ——; Moon v. Hines, supra. See authorities collected in Crim v. L. & N. R. Co., supra, and L. & N. R. Co. v. Heidtmuel-

206 ALA.—20

ler, 89 South. 191,[3] written before Mo. Pac. Ry. Co. et al. v. Ault, supra, was decided.

A pertinent provision of General Order No. 18, of Mr. W. G. McAdoo, Director General of Railroads, issued April 9, 1918, is:

"It is therefore ordered, that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resides, or in the county or district where the cause of action arose."

This order was amended by General Order No. 18-A, issued April 18, 1918, as follows:

"It is therefore ordered that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district where the cause of action arose." 2 Roberts, Fed. Liab. of Carriers, pp. 1700, 1701.

Such were the original conditions to maintaining suit against the United States for a tort committed, the proximate result of which was personal injury, by agents of the United States government in operating the transportation properties of corporations and individuals, when the plaintiff brought her first suit in the superior court of Fulton county, Ga. The conditions of suit and its prosecution to judgment were thereafter changed by General Order 26. A consideration of General Orders numbered 18 and 18-A must, therefore, be in connection with General Order 26 (May 23, 1918), which is merely an amplification or interpretation of said foregoing orders. It is therein recited by way of preamble:

" * * * * That there are now pending against carriers under Federal control a great many suits for personal injury * * * being pressed for trial by the plaintiffs in states and jurisdiction far removed from the place" where the persons alleged to have been injured or damaged resided at the time of such injury or damage, or far remote from the place where the causes of action arose; "the effect of such trials being that men operating the trains engaged in hauling war materials, troops, munitions or supplies, are required to leave their trains and attend court as witnesses, and travel sometimes for hundreds of miles from their work, necessitating absence from their trains for days and sometimes for a week or more; which practice is highly prejudicial to the just interests of the government and seriously interferes with the physical operations of railroads; and the practice of trying such cases during federal control in remote jurisdiction is not necessary for the protection of the rights or the just interests of plaintiffs"; and it was "ordered that upon a showing by the defendant carrier that the just interests of the government would be prejudiced by a present trial of any suit against any carrier under federal control which suit is not covered by General Order No. 18 and which is now pending in any county or district other than where the cause

[3] Ante, p. 29.

of action arose or other than in which the person alleged to have been injured or damaged at that time resided, the suit shall not be tried during the period of federal control; provided, if no suit on the same cause of motion is now pending in the county or district where the cause of action arose, or where the person injured or damaged at that time resided, a new suit may, upon proper service, be instituted therein; and if such suit is now barred by the statute of limitations, or will be barred before October 1, 1918, then the stay directed by this order shall not apply unless the defendant carrier shall stipulate in open court to waive the defense of the statute of limitations in any such suit which may be brought before October 1, 1918." 2 Roberts, p. 1709.

When a plaintiff of the class embraced in the provisions of General Order No. 26, and given the right of bringing a "new" suit or second suit, has acted under the consent embraced in said order, such plaintiff is thereafter bound by the indisputable election of bringing a new suit in a court of competent jurisdiction within the county or district where the cause of action arose or where the person injured or damaged at the time resided. The statute of limitations was even waived by the order, or provision made therefor in favor of such plaintiff. Having made the election by bringing the "new" suit in Alabama, it was irrevocable. Alexander v. Mobile Auto. Co., 200 Ala. 586, 76 South. 944; Lehman, Durr & Co. v. Van Winkle & Co., 92 Ala. 443, 8 South. 870; Zavelo v. Cohen Bros., 156 Ala. 517, 47 South. 292; Ex parte Logan, 185 Ala. 525, 64 South. 570, 5 L. R. A. (N. S.) 1068, Ann. Cas. 1916C, 405; Hickman v. Richburg, 132 Ala. 638, 26 South. 136; Fuller v. Eames, 108 Ala. 464, 19 South. 366.

The extraordinary right or privilege exercised by plaintiff was grounded on the fact: (1) That the tort resulting in the one injury to plaintiff for which she sued was caused by the government of the United States in its operation of the transportation properties of the Louisville & Nashville Railroad Company, a corporation, and not by the defendant corporation, nor by its agents or servants; (2) that the sovereign had prescribed the terms upon which it might be sued for such injury; and (3) plaintiff was proceeding under that authority and in strict conformity therewith. Authorities are collected in Moon v. Hines, supra; Crim v. L. & N., supra; L. & N. v. Heidtmueller, supra; McDougal v. L. & N. R. Co., 17 Ala. App. 468, 85 South. 880. In Northern Pacific and Hines v. Ault, supra, the announcement was for the first time made by the Supreme Court of the United States that there was no divided control and operation of railroads by the government and that suit must be maintained against the Director General of Railroads by name, not against the corporation, for the tort committed by the government's agents in operation of transportation facilities and properties of persons and corporations taken over and operated by the government. Missouri Pac. R. Co. et al. v. Ault, supra.

It is true that the complainant did not aver its citizenship; it was not necessary. The management, control, and operation of the transportation facilities of the Louisville & Nashville Railroad Company, a corporation, had been taken over and were being operated by the governmental agents and as governmental agencies, as provided and designated under the acts of Congress, the President's proclamations, and his designation of the Director General of Railroads, whose orders were duly published. The Director General, as the supreme agent or official of the United States government in authority, was operating complainant's property, not as a resident of either state made the situs of the two suits, or of any state, but for the nation, with his official residence in the city of Washington, D. C. Had defendant resided within the state of Alabama, under our announcements there would have been no question about the the temporary injunction being made perpetual. Weaver v. Ala. Gt. Sou., 200 Ala. 432, 76 South. 364; Folkes v. Cent. of Ga., 202 Ala. 376, 80 South. 458; Allen v. Buchanan, 97 Ala. 399, 11 South. 777, 38 Am. St. Rep. 187. Pertinent observations to the effect that the supreme agent of the government operating the transportation system of the country during time of war was not a citizen of any state are made in Westbrook v. Director General (D. C.) 263 Fed. 211, 213. See, also, Sou. Cot. Oil Co. v. A. C. L. (D. C.) 257 Fed. 138; Wood v. Clyde S. S. Co. (D. C.) 257 Fed. 879. And the legal effect of such operation or agency in the control, conduct, and operation of transportation facilities of persons or corporations by the government, was recently declared by the Supreme Court of the United States. Mo. Pac. R. Co. et al. v. Ault, supra, where Mr. Justice Brandeis declared that the persons who had been officers and employees of the owning companies ceased in general to be such and became agents and employees of the director general. Service of process on them no longer bound their former employers. Western Union Tel. Co. v. Poston, June 6, 1921, 256 U. S. 662, 41 Sup. Ct. 598, 65 L. Ed. ——. Hines v. Moon, supra; authorities cited in Crim v. L. & N. R. Co., supra.

The equity of the bill must, therefore, be grounded on compliance with the terms on which the sovereign had consented to be sued, and the necessity therefor indicated in the general orders of the director general touching the government's operation of transportation facilities to the accomplishment of its first duty—the untrammeled prosecution of the war and transportation of war emergen-

cies. Any act by a person which would seriously interfere with such transportation, inconvenience the government in the prosecution of this paramount duty, or impose unnecessary and additional burdens upon the United States, would be adverse to the interests of the government and of the general public. The withdrawal of the train crew from railroad service in Alabama, where plaintiff lived and the cause of action arose, and taking them to Fulton county, Ga., where the first suit was instituted, the loss of time and expense incident to, and the lack of process consequent upon such action tended to jeopardize the interests of the government and the people of the whole country, and were in violation of the letter and spirit of General Orders 18, 18-A, and 26.

We are brought to the inquiry: Since respondent had filed her suit in the circuit court of Morgan county, Ala., under the provisions of General Order No. 26, declared the venue of her action, and submitted her person and cause to the rules of law obtaining and governing in the Alabama courts, are the courts of this state authorized to sustain injunction against a citizen of Alabama prosecuting a second suit in Georgia for the same injury? In Weaver v. Ala. Gt. Sou. supra, Mr. Justice Somerville collected authorities to the effect: (1) That courts of one state may take jurisdiction of a transitory cause of action originating in another state, when the defendant has been duly served in such state, even though both parties are at the time domiciliary residents of the foreign state; (2) that although courts of one state or country have no authority to stay proceedings in the courts of another, they have authority "to control all persons and things within their own territorial limits"; (3) that when both parties to a suit in a foreign state or country are resident within the territorial limits of another state or country, courts of equity in the latter may act in personam upon those parties, and direct them, by injunction, to proceed no further in such suit. That is to say, while not directing or controlling the foreign court, and without regard to the subject-matter of the dispute, courts of equity in such jurisdiction may consider the equities between the parties and decree in personam; and "whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally, with respect to the subject of suits in a foreign country, as the ends of justice may require; and with that view to order them to take or to omit to take any steps and proceedings in any other court of justice, whether in the same country or in any foreign country." 2 Story's Eq. Jur. (13th Ed.) §§ 899, 900. (4) That "there is one exception * * * recognized in America, and that is that the state courts cannot enjoin proceedings in the courts of the United States (U. S. v. Keokuk, 6 Wall. 514, 18 L. Ed. 933; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981, 985), nor the latter in the former courts" (Craft v. Lathrop, 2 Wall., Jr., 103) Fed. Cas. No. 3318—proceeding upon peculiar grounds of municipal and constitutional law, the respective courts being entirely competent to administer full relief in the suits pending therein. 2 Story's, § 900. This principle is dependent, so far as concerns the parties against whom injunctive relief is sought, upon the fact that—

"As long as a citizen belongs to a state, he owes it obedience and as between states, that state in which he is domiciled has jurisdiction over his person and his personal relations to other citizens of the state." Keyser v. Rice, 47 Md. 203, 28 Am. Rep. 448; Sandage v. Studabaker, 142 Ind. 148, 41 N. E. 380, 34 L. R. A. 363, 51 Am. St. Rep. 165; Carpenter v. Hanes, 162 N. C. 46, 77 S. E. 1101, Ann. Cas. 1915A, 832.

Otherwise stated, the jurisdiction rests on the authority vested in courts of equity over persons "within the limits of their jurisdiction, to restrain them from doing inequitable acts to the wrong and injury of others and on the power of the state to compel its own citizens to respect its laws, even beyond its own territorial limits." No general rule can be laid down as to when the court ought to enjoin a party from prosecuting a suit in a foreign jurisdiction. Each case must be governed by its own particular facts, showing it to be inequitable to proceed with the prosecution of the foreign suit in the orderly administration of justice. 14 R. C. L. pp. 413–415.

The instant suit is rested on the broader ground that the suit against the sovereign must be maintained on the right or consent granted; and on this principle it has been held that a court will dismiss any case brought after promulgation of General Orders 18 and 18-A (April 9 and 18, 1918), not in accordance therewith; that is, if brought in a county or district other than where the plaintiff resided during the accrual of the cause of action or where the cause of action arose. Such must be the construction of and authority to proceed with the prosecution of a suit under General Order No. 26 (May 23, 1918) of force at the time the Alabama suit was brought, and issued after the date of bringing the Georgia suit. Cocker v. N. Y., etc., Co. (D. C.) 253 Fed. 676–679; Harnick v. Penn. R. R. Co. (D. C.) 254 Fed. 748; Nash v. Sou. Pac. Co. (D. C.) 260 Fed. 280; 10 Ann. Cas. 26, note; 16 Ann. Cas. 671; Ann. Cas. 1913B, 204; 25 L. R. A. (N. S.) 267, 917; 34 L. R. A. 363; 59 Am. St. Rep. 879 et seq., notes.

A just application of the foregoing general rule was made in Cocker v. N. Y., etc., Co., supra, where it was said that under General

Order No. 26, upon a showing that the just interests of the government will be prejudiced by a present trial of action against a carrier under federal control pending in a county or district other than where the cause of action arose or where plaintiff then resided, but allowing a new action in the other county or district, a stay of action may be granted though no "new suit" be brought, dependent upon the circumstances of each case, the primary consideration being the situation of the government relative to railroad witnesses leaving their work, etc. Where, however, the plaintiff has recognized the inconvenience recited in the preamble to General Order No. 26, and the necessity or just provisions of the additional authority to bring a second action in the county or district where the plaintiff resided at the time of the accrual of the cause of action or where the cause of action arose, and brought the new suit in the county and state of her residence at the time of the accrual of the cause of action and where the cause of action arose, she is bound by this election to proceed in the last-acquired jurisdiction and may be enjoined from further procedure in the "remote jurisdiction."

The fact that Pearl Holmes by making the election and bringing the second suit under General Order No. 26 in the county of Morgan, state of Alabama, has foregone an advantage accorded by the laws of the state of Georgia, as pointed out by Mr. Justice Somerville in Weaver v. Ala. Gt. Sou., supra, is not a sufficient reason to prevent a court of equity from enjoining her from proceeding in the Georgia court at the expense and inconvenience of the government or the defendant Louisville & Nashville Railroad Company, which was in no wise responsible for the tort in question, but whose property rights are jeopardized by the suits in question contrary to the letter and spirit of rule 26 of the Director General of Railroads.