(95 South. 188)

**DAVIS, Director General, etc., v. DAWKINS.**
**(4 Div. 8.)**

(Supreme Court of Alabama. Nov. 23, 1922. Rehearing Denied Jan. 25, 1923.)

**1. Carriers ⬥227(2)—Special plea unnecessary where plaintiff introduces bill of lading containing limitations on liability.**

The provisions of a bill of lading limiting liability, or the amount of recovery in the event of liability, are available to the carrier without a special plea where the bill of lading has been offered in evidence by the plaintiff.

**2. Carriers ⬥227(3)—Shipper's complaint in code form authorizes recovery on special contract.**

A complaint by a shipper against the carrier in the Code form authorizes the plaintiff to recover by proving the special contract, the bill of lading, and a breach of the terms thereof.

**3. Carriers ⬥230(1)—Evidence held to raise jury question as to defective condition of car and shipper's examination.**

Evidence by the shipper that he did not see the car in which his mule was loaded, though he signed the bill of lading reciting that he had examined the car, and it was in suitable condition, with evidence by another witness for plaintiff that, when the mule was unloaded, it had an injured leg, and that there was a hole in the floor of the car, *held* sufficient to take to the jury the question of examination of the car by the shipper and of its defective condition as the cause of the injury.

**4. Carriers ⬥227(2)—Special plea held demurrable because not so broad as complaint.**

Where the complaint by a shipper against the carrier was in the Code form, a special plea that, if plaintiff's mule was injured as the result of any defect in the car in which it was transported, defendant was not liable because of a provision in the bill of lading whereby the shipper agreed that he had examined the car, and that it was suitable, was demurrable because not so broad as the complaint.

**5. Carriers ⬥218(6)—Recital of bill of lading that shipper had examined car is not conclusive.**

Under Code 1907, § 5539, requiring the carrier to furnish a suitable car, sections 5546, 5547, providing that no bill of lading shall exempt the carrier from liability thereby imposed, and section 5514 et seq., declaring the measure of damages for delay or loss during shipment, a recital in the bill of lading for a shipment of live stock that the shipper had examined the car furnished by the carrier, and agreed that it was suitable for the purpose, was not conclusive upon the shipper.

**6. Carriers ⬥218(2)—State can protect shipper against provisions for notice and inspection when there is no actual notice.**

The state can promote the welfare and safety of those within its borders by requiring common carriers to be responsible for the full measure of the loss resulting from their negligence, notwithstanding a contract to the contrary, and can safeguard the rights of the shipper as to provisions in the bill of lading for notice, inspection, etc., when there was no notice or knowledge.

**7. Railroads ⬥5½, New, vol. 6A Key-No. Series—Suit maintainable only against federal agent.**

After the termination of federal control of railroads, a suit for damages sustained by a shipper during such control could be maintained only against the federal agent designated by the President under the Transportation Act, and could not be maintained against the Director General or the United States.

**8. Appeal and error ⬥197(3)—Failure to substitute federal agent after termination of federal control must be questioned at trial.**

The failure to amend a complaint against the Director General of Railroads after the termination of federal control so as to substitute as defendant the federal agent designated under the Transportation Act presented a variance between the allegations and the proof which cannot be relied upon on appeal, where the attention of the trial court was not called to it during the trial when the amendment was permissible as required by the new circuit court rule (175 Ala. xxi).

Appeal from Circuit Court, Henry County; H. A. Pearce, Judge.

Action by W. T. Dawkins for damages against James Cox Davis as Director General, etc. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

Arrington & Arrington, of Montgomery, for appellant.

Under his complaint, in Code form, plaintiff could and did prove a special contract, containing a provision requiring him to do certain things; and his evidence affirmatively showing that he failed to comply with the condition, defendant was entitled to the general affirmative charge. 12 Ala. App. 358, 67 South. 707; 16 Ala. App. 186, 76 South. 470; 67 South. 1002. The stipulation for inspection of the car by plaintiff is valid. 178 Ala. 657, 59 South. 669. Where, at time of

---

trial of an action brought against the Director General, federal control has terminated, the federal Agent designated by the President is the only party, and judgment against the Director General is improper. (Tex. Civ. App.) 228 S. W. 633; 58 Utah, 445, 199 Pac. 681; 17 Ala. App. 623, 88 South. 196; 17 Ala. App. 230, 84 South. 400.

W. L. Lee, of Columbiana, for appellee.

No brief reached the Reporter.

THOMAS, J.   The suit was for injury to stock being transported by a common carrier; and error is assigned of the failure to give the general affirmative charge requested in writing by defendant.   To the complaint, in Code form, the defendant replied by the general issue and special plea as follows:

"That, if the mule was injured as the result of any defect in the car in which it was transported, that the defendant is not liable for said injury for that, in the contract of shipment under which the said mule was shipped, in consideration of the reduced rates of freight or special rate of freight, it was expressly agreed that the shipper would examine the car, and had done so, and found it in good order and condition provided for the transportation of said mule, and that he accepted the same and agreed that the said car was suitable and sufficient for the purpose of transporting said mule."

The judgment recites that upon this plea issue was joined.   On the trial plaintiff offered in evidence the bill of lading for an intrastate shipment of stock from Montgomery to Abbeville, Ala., containing provisions that—

"The party of the second part, in consideration of the special rate hereinbefore provided, and of the transportation of said animals as aforesaid, hereby covenants and agrees: That he has examined and found in good order and condition the car or cars provided by the railway company for the transportation of said live stock and hereby accepts the same and agrees that they are, as thus provided, suitable and sufficient for said purpose."

And that—

"As a condition precedent to any right to recover any damage for loss or injury to said live stock, notice in writing of the claim therefor shall be given to the agent of the carrier actually delivering said live stock wherever such delivery may be made, and such notice shall be so given before said live stock is removed or intermingled with other live stock."

The evidence showed that the animal was injured by reason of a hole in the floor of the car in which the animal (with others) was shipped.

[1, 2] Provisions of a bill of lading limiting liability or the amount of recovery in event of liability are available to a carrier without a special plea where the bill of lading has been offered in evidence by the plaintiff.   Ex parte J. Kilgore & Son, 191 Ala. 671, 67 South. 1002; I. C. R. R. v. Kilgore & Son, 12 Ala. App. 358, 67 South. 707.   The complaint, being in Code form, authorized the plaintiff to recover by proving the special contract, the bill of lading (L. & N. R. Co. v. Landers, 135 Ala. 504, 33 South. 482; N. C. & St. L. v. Cody, 137 Ala. 597, 34 South. 1003; Walter v. A. G. S., 142 Ala. 474, 481, 39 South. 87; Sou. Ry. v. Webb, 143 Ala. 304, 39 South. 262, 111 Am. St. Rep. 45, 5 Ann. Cas. 97), and a breach of the terms thereof.

Were the foregoing provisions in the bill of lading, as pleaded, that the shipper had examined the car and found it in "good order and condition" as "provided by the railway company for the transportation" of the livestock in question, and accepted the same and agreed that said car "as thus provided" was "suitable and sufficient for said purpose," conclusive of the fact of examination and knowledge of its condition as indicated?   If so, or if the fact of such inspection and acceptance was shown by the uncontroverted evidence, the affirmative charge, requested by defendant should have been given.   The sufficiency of a provision for notice of injury and damage in a bill of lading, where the injury and damage were "peculiarly within the knowledge" of plaintiff was the subject of discussion in intrastate shipments in N. C. & St. L. v. Hinds, 178 Ala. 657, 59 South. 669, N. C. & St. L. v. Cash, 195 Ala. 307, 70 South. 269, and Sou. Ry. v. Harris, 202 Ala. 263, 80 South. 101, under provisions of Code, § 4297, and in interstate shipments in N., C. & St. L. v. Camper, 201 Ala. 581, 78 South. 925, and Sou. Ry. v. Propst & Duckworth, 16 Ala. App. 186, 76 South. 470, under the Carmack Amendment, 24 Stat. 379, 382, c. 104, 34 Stat. 593, § 20, U. S. Comp. St. §§ 8604a, 8604aa, and Northern Pac. v. Wall, 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905, and G. F. & A. v. Blish Mill. Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948.   No contention is made that federal laws or regulations have application to this phase of the case.

In Southern Railway v. Harris, supra, is contained the observation of the limitation of the statute to an intrastate shipment that:

"The provisions of Code, §§ 4297, 5546, 5547, rendered nugatory any stipulation of bills of lading undertaking to set up agreements in qualification of established legal rights or notices of claim as a condition to the existence of the cause of action or to the right to declare for the wrong suffered."

Statutory provisions of force and having application to contracts such as declared upon in the instant complaint, or relied upon by introduction in evidence by the plaintiff, of the bill of lading, are that:

"Every railroad shall, when within its powers so to do, and upon reasonable notice, furnish suitable cars to any and all persons who may

apply therefor, for the transportation of any and all kinds of freight in carload lots." Code, § 5539.

"Every common carrier, railroad, or transportation company receiving property for transportation, originating and terminating in this state, shall issue to the shipper a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it; * * * and no contract, stipulation, receipt, rule, or regulation contained in said receipt or bill of lading, or otherwise, shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; but nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws." Section 5546.

"All railroad companies shall on demand issue duplicate freight receipts or bills of lading to shippers. * * * and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it, * * * and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from liability imposed, and nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Section 5547.

The measure of damages for loss, injury, or delay in delivery, etc., by common carriers was specifically declared by sections 5514 et seq. of the Code.

[3] The uncontradicted testimony for plaintiff showed injury to the mule before its arrival at Abbeville; that the same was in good condition when delivered to defendant's stockyards in Montgomery to be loaded on the car; that the consignor at Montgomery received the bill of lading in question from the common carrier about the time of delivery to the railroad at its stockyards, but did "not know who loaded the stock in the car"; that "all stock were left in control of the railroad authorities to be loaded" and that he "got a bill of lading for them at the time they were turned over to the railroad"; that he was not present when they were loaded; that he never saw the car and did not examine it at any time as recited in the bill of lading; that when he was at the stockyard his mules were in a pen of defendant whose agent had "charge of the yards"; and that the stock in question were in good condition when delivered to the railroad company and the bill of lading issued and delivered to him as consignor. The witness Guilford testified that he was present when the mules were unloaded at Abbeville, and saw that the right hind leg of the mule in question was "torn in to the bone"; immediately he went through the car from which that mule was unloaded, and "saw a hole in the floor" and that "there was some blood about the hole"; that he reported the injury and condition to the consignee; that he broke the seal on the car and unloaded the same late in the

evening, immediately after the car was placed by the railroad company for unloading. Witness Bob Wood testified that he was in need of a stock car, knew of Dawkins unloading the mules, and made application and got a car; that the defendant's office notified him, through one Richards, that there was a "hole in the car," and that "we will have to fix it"; that when witness inspected the car that was thereafter delivered to him he fixed the hole in the car floor.

Defendant's testimony, through its witness Wood was that, as agent of the Coast Line at Abbeville, he examined the car in question, and found it in good condition except a hole in the floor that was fixed; that the car with the hole in it, and which was repaired, was not the same in which the mule in question arrived. This tendency of evidence and of a conflict as to the condition of the car and the hole being in the floor, and conflicting evidence as to the plaintiff's examination of the car before shipment, made a jury question. McMillan v. Aiken, 205 Ala. 35, 88 South. 135.

[4-6] Plea 3 was not so broad as the complaint, and was subject to demurrer for such ground. Having taken issue on the insufficient plea and the introduction of the bill of lading with the stipulation that consignor "has examined and has found in good order and condition the car or cars provided by the railway company for the transportation of said live stock and hereby accepts the same and agrees that they are * * * suitable and sufficient for said purpose," under foregoing evidence, the provisions of the statute and the conflicting evidence to which we have adverted, the giving of the affirmative charge requested in writing by defendant was not warranted. To say that such recitals in a bill of lading for an intrastate shipment were conclusive on the shipper, as to his having inspected the car, whether he did or not, would ignore the letter and spirit of the statute enacted by the state in the exercise of its jurisdiction and power, recognized by the Supreme Court of the United States. That is to say, if "the state has the right to promote the welfare and safety of those within its jurisdiction by requiring common carriers to be responsible to the full measure of the loss resulting from their negligence, a contract to the contrary notwithstanding" (Penn. R. R. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268; Liverpool, etc., Nav. Co. v. Brooklyn Terminal, 251 U. S. 48, 40 Sup. Ct. 66, 64 L. Ed. 130), it has the right to enact statutes safeguarding the rights of the shipper as to provisions for notice, inspection, etc., when there was no notice or knowledge of the condition within the time stipulated or of the facts recited and sought to be pleaded in bar.

[7] Additional authorities cited on the "point that appellant was entitled to the affirmative charge requested," and to the

effect that "where, at the time of the trial of an action brought against the Director General, federal control has terminated, the federal agent designated by the President under the Transportation Act (41 Stat. 456) is the only party, and judgment against the Director General ·and against the United States is improper," are Hines v. Jordan (1921 Tex. Civ. App.) 228 S. W. 633, and Tutsch v. Director General of Rys. (Cal. App.) 199 Pac. 861. After the railway company's properties had been returned to its owners (the Atlantic Coast Line Railroad) the only· proper party defendant was the agent designated by the President as the agent of the federal government to represent it in the defense of suits brought on causes of action arising during the time the President operated railroads, in accordance with the acts of Congress, and to February 28, 1920. The United States could not at the date of the instant trial and judgment, on August 3, 1921, be made a proper party to the suit, except through its designated agent, and as required by law. L. & N. R. R. Co. v. Shikle, 206 Ala. 494, 90 South. 900, 902; that is to say, other than as authorized by federal Transportation Act, § 206, no warrant existed for suing James Cox Davis, and as such agent; since "plaintiff in bringing the action sought to avail * * * of the privilege so granted by special act, in order to maintain the same, * * * must have strictly complied with the terms and conditions embodied in the statute, one of the provisions of which is that such suits must be brought within the period there specified. * * *" L. & N. R. R. Co. v. Shikle, 206 Ala. 494, 90 South. 900, 902; Central of Georgia Ry. Co. v. Camp Hill Trading Co. (Ala. Sup.) 94 South. 350; [1] Tutsch v. Director General of Rys. (Cal. App.) 199 Pac. 861. And failure of a statutory compliance as to bringing suit or presenting the claim, is not authorized to be waived by the government agents. Finn v. United States, 123 U. S. 227, 8 Sup. Ct. 82, 31 L. Ed. 128. See authorities collected in L. & N. R. Co. v. Holmes, 206 Ala. 304, 89 South. 610.

·[8] The government having been properly sued in the first instance (North Carolina R. Co. v. Lee, Adm'x [No. 33, October term, 1922] 260 U. S. 16, 43 Sup. Ct. 2, 67 L. Ed. ——; Missouri Pac. R. R. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 61 L. Ed. 1087), the failure to amend the complaint pursuant to the changed status of its agency (not of the liability of the government) occurring during pendency of the suit presented a variance between allegata and probata that would have warranted the giving of the general affirmative charge requested in .writing by defendant, had there been compliance with the new circuit. court rule (175 Ala. xxi). The attention of the trial court not having been duly called to the variance during the trial and when amendment was permissible (Allen v. Standard Ins. Co., 198 Ala. 522, 73 South. 897; McAnelly Co. v. Bemis Bros. Bag. Co. [Ala. Sup.] 94 South. 567; [2] Central of Georgia Ry. Co. v. Camp Hill Trading Co. [Ala. Sup.] 94 South. 350 [3]), no error intervened in the refusing of defendant's general affirmative charge requested in writing.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

[1] 208 Ala. 315.　　[2] 208 Ala. 394.　　[3] 208 Ala. 315.