153 So. 249

**GUS MAYER CO., Limited, v. LOUISVILLE & N. R. CO.**

**6 Div. 469.**

Supreme Court of Alabama.

March 1, 1934.

Rehearing Denied March 22, 1934.

Carl G. Moebes, H. H. Grooms, and Coleman, Spain, Stewart and Davies, all of Birmingham, for appellant.

Chas. H. Eyster, of Decatur, and White E. Gibson, of Birmingham, for appellee.

THOMAS, Justice.

The action of the trial court consisted in granting the motion for a new trial in the first instance for defendant, rendering a reduced judgment on resubmission, and overruling plaintiff's motion for a new trial. The lower court tried without a jury.

The evidence was undisputed that plaintiff sustained damages in the amount indicated in the first judgment, whereas the judgment on resubmission for a smaller amount was in accord with the limitations of the federal statute and southeastern tariff on file. On the date of the injury and damage, the defendant had on file with the Interstate Commerce Commission. its Southeastern Baggage Tariff No. 11, which was in force, and alleged to limit the recovery to the amount of the last judgment rendered and from which this appeal is taken.

When the lower court tries a cause without a jury, if the judgment is not justified by the evidence, a final judgment may be rendered by the appellate court in accordance with the law and the evidence. Section 6149, Code; Montgomery Light & Traction Co. v. Woods, 194 Ala. 329, 70 So. 119; Hill v. Rentz, 201 Ala. 527, 78 So. 881; Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363; Davis et al. v. Anderson et al., 224 Ala. 400, 140 So. 423; Hoffman v. State, 25 Ala. App. 640, 146 So. 920; Jefferson County v. Busby, 226 Ala. 293, 148 So. 411.

The evidence shows that plaintiff's agent had her ticket as an interstate passenger over defendant's way from Birmingham to New Orleans when she made delivery by the transfer company of the trunks at the baggage room in the passenger station of defendant; that some hours thereafter she exhibited her ticket and evidence for the transportation, surrendered her transfer checks to the defendant's baggage master, the trunks were located, weighed, and checked by him; and the excess baggage charges and demands were paid by that passenger; that the trunks were duly deposited on defendant's train and transported to the point of destination in another state. The evidence showed it was raining while the trunks were in defendant's baggage room or shed in Birmingham and before the passenger presented her ticket and transfer checks, that the roof of that shed was in bad condition, had and would leak, and that it was raining when the trunks were placed therein by the transfer company, and there was water on the floor at the time the trunks were in that room.

The effect of the court's holding and judgment was that under the evidence the trunks were wet, and the damage to the contents of the trunks was caused by the negligent failure of duty by the defendant, or its agents in charge of that baggage, and by reason of the insufficient or insecure roof of the shed against rain.

The evidence further shows, without dispute, that the railroad company's baggage tariff, duly certified to by the Secretary of the Interstate Commerce Commission, provided, among other things, that "The rules, regulations, rates and charges published herein .are the separate rules, regulations, rates and charges of each of the following individual carriers and its connections: * * * Louisville & Nashville Railroad Company;" that "The rules, regulations, rates and charges contained herein apply in the checking,

storage and transportation of baggage," etc.; and that "Baggage checks will be issued for baggage, other articles, property or corpses authorized herein, upon presentation of valid transportation only when owner of the property is also owner of the transportation and is a bona fide passenger over the 'same line to or beyond the destination of the baggage"; also provisions covering baggage allowance, excess weight, size, and value of baggage, and the method of computing the charges for excess weight.

The evidence further showed that the plaintiff in this cause had been fully paid for its loss or damage by the insurance company, or advanced to assured by it. Rule 18 of the Southeastern Baggage Tariff No. 11 was adverted to to cover the subject of "loan receipt" and the right of the insurance company to use the name of the injured party to sue for the resulting damages for the benefit of the insurance effected by the shipper or interstate passenger.

Appellant urges the similarity of the facts of this case to the decision rested on the facts in Birmingham Terminal Co. v. Thomas, 207 Ala. 363, 92 So. 803. That case was decided on count 4 set out in the statement of facts, and was against the Birmingham Terminal Company as a warehouseman of baggage intended for transportation and not delivered on due demand. The theory on which this case was tried is the delivery and damage to the trunks of defendant for interstate transportation and which, in a reasonable time thereafter, were carried as interstate commerce. Ex parte American Ry. Express Co., 213 Ala. 151, 106 So. 197; Davis, Director General, etc., v. Dawkins, 209 Ala. 45, 95 So. 188; Ala. Great Southern Railroad Co. v. Thomas & Sons, 83 Ala. 343, 3 So. 802.

It is insisted by appellee that, as concerned this defendant, its duty and liability, baggage delivered to it by the transfer company for a passenger was as a delivery by the passenger, and is received for transportation within section 20, paragraph 11, of the Interstate Commerce Act, 49 USCA § 20, par. 11. In this case, the baggage was received and transported as interstate commerce, and not received for keeping and delivery as a warehouseman. Nichols v. St. Louis & S. F. R. Co., 227 Ala. 592, 151 So. 347; Southern Ry. Co. v. Brown, 223 Ala. 140, 134 So. 643.

In Georgia, Florida & Alabama Railway Company v. Blish Milling Company, 241 U. S. 190, 36 S. Ct. 541, 542, 60 L. Ed. 948, the Supreme Court of the United States declared that the question as to the proper construction of a bill of lading for an interstate shipment issued under the provisions of the Carmack Amendment was a federal one; that a terminal carrier was not relieved from liability for its own wrong; that a failure to make delivery per a clause in the bill of lading casts the responsibility, with respect to the entire transportation, upon the carrier; and that the initial carrier may validly and reasonably stipulate "in the bill of lading, issued conformably to the Carmack amendment * * * for an interstate shipment." The court said: "We are dealing with a clause in a bill of lading issued by the initial carrier. * * * The aim was to establish unity of responsibility" (New York, New Haven & Hartford Railroad Company v. Interstate Commerce Commission, 200 U. S. 361, 393, 26 S. Ct. 272, 50 L. Ed. 515, 521; Western Union Telegraph Company v. Esteve Brothers & Company, 256 U. S. 572, 41 S. Ct. 584, 65 L. Ed. 1097), "and the words of the statute are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the Federal act, includes delivery"—that is, a due and proper delivery under the engagement or contract. For notice under the bill of lading, etc., see L. R. A. 1916D, 1050; Snyder v. King, 199 Mich. 345, 165 N. W. 840, 1 A. L. R. 893, 900, et seq., and authorities collected; Ex parte American Railway Express Co., 213 Ala. 151, 106 So. 197; Davis, Director General, etc., v. Dawkins, 209 Ala. 45, 95 So. 188; Boston & Maine Railroad v. Hooker, 233 U. S. 97, 34 S. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593, and Rose's notes on this case.

The rule that obtains in interstate transportation of property is given statement in the many federal decisions. L. R. A. 1917B, p. 927; Missouri, Kansas & Texas Railway Company v. Harris, 234 U. S. 412, 34 S. Ct. 790, 58 L. Ed. 1377, L. R. A. 1915E, 942; Chicago, Rock Island & Pacific Railway Company v. Maucher, 248 U. S. 359, 39 S. Ct. 108, 63 L. Ed. 294; Ex parte American Ry. Express Co., supra; Davis, Director General, etc., v. Dawkins, supra. The limitation of liability for a passenger's baggage traveling from Canada to Texas is regulated within sections 6 and 22 of the Interstate Commerce Act (49 USCA §§ 6, 22). Galveston, Harrisburg & San Antonio Railway Company v. Woodbury, 254 U. S. 357, 41 S. Ct. 114, 115, 65 L. Ed. 301; Southern Railway, etc., v. Driggs, 242 U. S 613, 37 S. Ct. 20, 61 L. Ed. 527.

In Galveston, Harrisburg & San Antonio Railway Company v. Woodbury, supra, the

court said: "The test of the application of the act is not the direction of the movement, but the nature of the transportation as determined by the field of the carriers' operation. This is the construction placed upon the act by the Interstate Commerce Commission. International Paper Co. v. Delaware & H. Co., 33 I. C. C. 270, 273, citing Texas & P. R. Co. v. Interstate Commerce Commission, 162 U. S. 197, 40 L. Ed. 940 [5 I. C. R. 405], 16 S. Ct. 666. It is in harmony with that placed upon the words of section 1 of the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445, Comp. St. § 8029 [6 Fed. Stat. Anno. (2d Ed.) 371, 46 USCA § 190])."

In Boston & Maine Railroad v. Piper, 246 U. S. 439, 38 S. Ct. 354, 355, 62 L. Ed. 820, Ann. Cas. 1918E, 469, the court declared:

"The Carmack Amendment ([34 Stat. at L. 595, chap. 3591, § 7] Comp. Stat. 1916, §§ 8604a, 8604aa) requires the initial carrier to issue a bill of lading, and carriers are obliged to carry the articles shipped at the rates fixed in the published tariffs. Many decisions of this court have held that the carrier may offer to the shipper and the shipper may be bound by a contract which limits recovery to a valuation declared by the shipper in consideration of the reduced rate for the carriage of the freight. This rule was stated in an early case arising after the passage of the Carmack Amendment. Adams Exp. Co. v. Croninger, 226 U. S. 491, 509, 510, 57 L. Ed. 314, 321, 322, 44 L. R. A. (N. S.) 257, 33 S. Ct. 148, and has been frequently reiterated since.

"In the cases in which the recovery for the lesser valuation has been affirmed, the shipper was offered an opportunity to recover a greater sum than the declared value upon paying a higher rate to the carrier. The shipper was offered alternative recoveries based upon different valuations upon the payment of different rates, and was held bound by the one chosen. Such contracts of shipment this court has held not to be in contravention of the settled principles of the common law preventing a carrier from contracting against liability for losses resulting from its own negligence, and are lawful limitations upon the amount of recovery binding upon the shipper upon principles of estoppel."

In Boston & Maine Railroad v. Hooker, 233 U. S. 97, 34 S. Ct. 526, 532, 58 L. Ed. 868, 870, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593, Mr. Justice Day, in touching upon the subject of baggage and checks therefor, as affecting passengers and their said property in interstate transit, said for the court: "We do not think the requirement of the Carmack amendment, that a railway company receiving property for transportation in interstate commerce shall issue a receipt or bill of lading therefor, required other receipts than baggage checks, which it is shown were issued when the baggage was received in this case. When the amendment was passed Congress well knew that baggage was not carried upon bills of lading, and that carriers had been accustomed to issue checks upon receipt of baggage. We do not think it was intended to require a departure from this practice when the matter was placed under regulation by schedules filed and subject to change for unreasonableness upon application to the Commission. Such checks are receipts, and there is no special requirement in the statute as to their form. It is doubtless in the power of the Interstate Commerce Commission to make requirements as to the checks or receipts to be given for baggage if that subject needs regulation. Act of June 18, 1910, §§ 1 and 15 (36 Stat. at L. 539, chap. 309)."

And of agreements under the statute, it is declared in New York Central & Hudson River Railroad Company v. Beaham, 242 U. S. 148, 37 S. Ct. 43, 44, 61 L. Ed. 210, 216, as follows:

"And the carrier is entitled to the presumption that its business is being conducted lawfully. Southern Exp. Co. v. Byers, 240 U. S. 612, 614, 60 L. Ed. 825, 827, L. R. A. 1917A, 197, 36 S. Ct. 410; Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U. S. 319, 326, 60 L. Ed. 1022, 1025, L. R. A. 1917A, 265, 36 S. Ct. 555.

"In the circumstances disclosed, acceptance and use of the ticket sufficed to establish an agreement prima facie valid which limited the carrier's liability. Mere failure by the passenger to read matter plainly placed before her could not overcome the presumption of assent. New York C. & H. R. R. Co. v. Fraloff, 100 U. S. 24, 27, 25 L. Ed. 531, 533; The Kensington, 183 U. S. 263, 46 L. Ed. 190, 22 S. Ct. 102; Fonseca v. Cunard S. S. Co., 153 Mass. 553, 12 L. R. A. 340, 25 Am. St. Rep. 660, 27 N. E. 665.

"In order to determine the liability assumed for baggage it was proper to consider applicable tariff schedules on file with the Interstate Commerce Commission; and the carrier had a Federal right not only to a fair opportunity to put these in evidence, but also that, when before the court, they should be given due consideration. Southern Exp. Co. v. Byers, 240 U. S. 614, 60 L. Ed. 827, L. R. A. 1917A, 197, 36 S. Ct. 410; Kansas City

Southern R. Co. v. Jones, 241 U. S. 181, 60 L. Ed. 943, 36 S. Ct. 513. After their admission in evidence by the trial court the schedules could not be disregarded arbitrarily without denying the railroad's Federal right; and we think they were so treated by the court of appeals."

See, also, American Railway Express Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414; 10 C. J. p. 139 et seq.

There is no count in the complaint which, under the evidence, would sustain a finding of liability against the railroad company in this case, on the theory of liability as a warehouseman. It was alleged and shown that the trunks were delivered to the railroad company as a common carrier for transportation from Birmingham, Ala., to New Orleans, La., and the evidence further shows that, before the baggage was delivered to the Birmingham Transfer & Traffic Company, the ticket upon which the trunks were checked and transported had been purchased, that the trunks were subsequently checked and transported on this ticket, and the only capacity in which this appellee, railroad company, contracted and acted, was in its capacity as a common carrier.

The text of Elliott on Railroads is supported by authority, to the effect that "The liability of the company as a common carrier begins, as a rule, at the time the baggage is delivered to it for transportation, unless the time of such delivery be an unreasonable length of time before the owner's intended departure. In order that the liability as a common carrier should exist it is not always necessary that the passenger should have purchased a ticket, nor that he should even make the journey which he intends to make. As persons often become entitled to the rights of passengers before the purchase of a ticket, so the liability of the carrier for baggage sometimes begins before the purchase of a ticket, or even before the company becomes liable to the owner of the baggage as a passenger. Where a person in good faith intends to take passage on a railway train or the like and delivers his baggage to the company a reasonable time in advance of the anticipated journey, it seems that the company will be liable for such baggage as a common carrier from the time of such delivery and acceptance. And in such cases the company may be liable although the person does not purchase a ticket or make the proposed journey, as for instance, where he is prevent-

ed from so doing by the fault of the carrier and the loss or destruction of the baggage before the journey begins." 5 Elliott on Railroads (3d Ed.) § 2512, pp. 322, 323, and 324.

It is further declared by the Supreme Court of the United States that, "If a common carrier agree that property intended for transportation by him may be deposited at a particular place without express notice to him, such deposit alone is a sufficient delivery; and that such an agreement may be shown by a constant practice and usage so as to receive property without special notice." Pratt v. Grand Trunk Railway Co. of Canada, 95 U. S. 43, 47, 24 L. Ed. 336.

The plaintiff in this cause had paid to the Birmingham Transfer & Traffic Company for the safe transportation of its trunks from the plaintiff's place of business at Birmingham, Ala., to the Birmingham Transfer & Traffic Company's place of business at the Louisville & Nashville Station, and subsequent delivery by the Birmingham Transfer & Traffic Company to the defendant; and if, under its agreement with plaintiff and the Louisville & Nashville Railroad Company, the transfer company had the right to deposit the trunks when and where it did—in defendant's baggage room—or place for and remove in immediate passage, as was the case here, was a delivery to the defendant the object of interstate commerce? 5 Elliott on Railroads, § 2512, p. 323, and many authorities; Pratt v. Grand Trunk Railway Co. of Canada, supra; Nichols v. St. L. & S. F. R. Co., supra; Britton Lumber Co. v. Central of Georgia R. Co., 221 Ala. 134, 127 So. 824; Louisville & N. R. Co. v. Kinney, 221 Ala. 136, 127 So. 804; Southern R. Co. v. Brown, 223 Ala. 140, 134 So. 643.

We are not of opinion that the provision of the federal act (49 USCA c. 1, § 1, par. (2), reading: "Transportation subject to regulation. The provisions of this chapter shall also apply to such transportation of passengers and property and transmission of intelligence, but only in so far as such transportation or transmission takes place within the United States, but shall not apply—(a) To the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property, wholly within one State and not shipped to or from a foreign country from or to any place in the United States as aforesaid"—has application to the facts before us. The natural import of the statute and the use of the word "shipped" in that pro-

vision of the statute would not limit the act of interstate commerce alone to *movement* of the article for and in its course of transportation. Its deposit and receipt in good faith for immediate transportation, and its due embarkation in such transit to another state was an act of interstate commerce within the federal statute and decisions, and was within the application and limitations of the tariff.

We find no error in the ruling of the circuit court, and that judgment is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.